[Civ. No. 4177. Third Appellate District.—April 13, 1931.]

JOHN TRABUCCO et al., Respondents, v. A. R. SORRELS, Appellant.

Edward J. Lynch and Charles L. Gilmore for Appellant.

F. M. Ostrander and Louis T. Milburn for Respondents.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—A rehearing was granted in this cause, not by reason of any doubt as to the correctness of the conclusions heretofore reached, but for the purpose of restraining and setting forth excerpts from the testimony contained in the transcript showing that the findings of the trial court are sufficiently supported. With this in view we follow in the main the language of the original opinion.

The plaintiffs had judgment against the defendants in an action of ejectment involving the ownership of the east half of the southwest quarter of section 13, township 4 south, range 18 east, M. D. B. & M. From this judgment the defendant appeals.

At the conclusion of the trial the court made the following findings of fact:

"I. That the plaintiffs are, and ever since the 7th day of September, 1922, have been the owners in fee, and entitled to the possession of all that certain real property, situate, lying and being in the County of Mariposa, State of California, and particularly described as follows, to-wit: (Here follows the description above given);

"II. That the east line of the east one-half of the southwest quarter of Section 13, Township 4 South, Range 18 East, M. D. B. & M., bears from a stone mound marked '¼,' being the quarter corner between Sections 12 and 13, T. 4 S., R. 18 E., M. D. B. & M., S. 5 deg. 18 min. E. to a stone mound standing on ridge running to the southwest, as said east line and said stone mound are set out as 'P. Trabucco's southeast corner, stone mound identified by John Trabucco as quarter corner between Sections 13 and 24', on that certain map introduced in evidence by plaintiff herein, and marked Plaintiff's Exhibit 7."

The court further found that the defendant, on or about the tenth day of July, 1927, located a certain mining claim known as and called "Big Pine Number 1 Quartz Claim", and placed the point of discovery within the boundaries of the lands found to belong to the plaintiffs, as hereinbefore described, and that the defendant was wrongfully in possession of the premises claimed by him. Conclusions of law were drawn to the effect that the plaintiffs were the owners

of the premises described, and judgment went for them, as herein stated.

Upon the trial of the action, and upon this appeal, the only question really presented for determination is the location of the south quarter corner of the lands described. On the part of the plaintiffs it is contended that the original corner was found in place; that the original monument of the original United States survey was found in place, and so determined by the trial court. On the part of the defendant and appellant the claim was and is made that the real quarter corner should be 351 feet west of the position described in the findings and judgment of the court. While there is conflicting testimony in the record as to the true location of the quarter corner referred to, if there is in the record testimony sufficient to support the findings of the trial court, then and in that case the judgment should be affirmed. If the testimony on the part of the plaintiffs, to the effect that the original corner set at the time of the original United States survey, is still in place, and was in place at the time of the trial, and was the quarter corner referred to at the time the patent was issued for the lands and premises mentioned in the findings as belonging to the plaintiffs, then and in that case, irrespective of whether the original survey was or was not strictly accurate, the plaintiffs were entitled to judgment.

As stated in 9 C. J. 164, original corners as established by the government surveyors, if they can be found, or places where they were originally established, if they can be definitely determined, are conclusive on all persons owning or holding with reference thereto, without regard to whether they were located correctly or not, and must remain the corners or monuments by which to determine the boundaries.

If the testimony upon which the court acted was sufficient to show the actual existence of the corner as marked when the original survey was made, then all questions and all the citation of authorities relative to locating lost corners and lost monuments, become immaterial.

With these preliminary statements the following excerpts taken from the testimony we think support the findings of the trial court:

The witness C. A. Robinson, called on behalf of the plaintiffs, testified that he was a licensed surveyor in the state of California, and had been such since the year 1895; that at one time he was county surveyor of Mariposa County, and also of Merced County; had at different times been a United States deputy surveyor, located in California. This witness testified that he found the north quarter corner between sections 12 and 13, being the north quarter corner of the premises claimed by the plaintiffs. The testimony shows that one of the stones in this corner bore the inscription "¼ corner". The location of this corner, as testified to by this witness, does not appear to be controverted. After finding this corner, the witness Robinson stated that a little later on he found the south quarter corner, being the south quarter corner between sections 13 and 24. The testimony of the witness, as to the location of this corner and the rocks constituting the same, appears in the transcript as follows: "I found the rocks constituting this corner; they are situate in the narrow crest of the ridge in what has been called a swag but which is the crest of a little ridge, that is in the field notes in the southeast corner of section 13, as well as that at the corner one-half mile west. There is a very dense amount of brush there; it is on the saddle where the corner is of the ridge, because it goes up hill. The monument is on the top of the ridge. This ridge makes a little elbow around in this direction and is rather regular until it comes to a turn where this swag commences—a saddle is what I would call it. I found stones in a circular position well filled with soil on the uphill side, and at that time the entire belt was covered with dense brush which was burned out last summer so it makes it appear a little different now, and I was standing with my transit within six feet of it, but I could not see it for the reason that the soil has filled in on this up-hill side of this rock, a big rock; on the lower edge the end of the monument was exposed. I knew in my own way as surveyor that there should be a corner there, because I had always had success in recovering corners set by Herman, so I searched everything for two days. Herman's monuments were always substantial; I never failed to get one, and I have worked in Mariposa County and in the Whitlock country; I have been in there for years and I never failed to find a corner of Herman's.

I knew the old monument was there; that monument had to check then and we called in an outside man to check with it. In my opinion it is the monument of the original survey by Herman.'' This witness then went on to state that the corner checked with the field-notes of the Herman survey.

Mr. Winton, a witness called on the part of the plaintiffs, testified that he was a licensed surveyor, and was, at the time of the trial, the city engineer of the city of Merced, and deputy county surveyor of the county of Merced; that he went with Mr. Robinson to the north quarter corner and found the stone marked ''$\frac{1}{4}$'' with a small mound of rocks. The witness Winton further testified that he used the field-notes of the original survey, and that the field-notes placed the corner on the ridge of land heretofore described as being the place where the monument was found. This witness also testified that the corner as located and indicated on the map as the southeast corner stone mound, identified as hereinbefore stated, was the south quarter corner section between sections 13 and 24.

Mr. Bertken, a witness called on behalf of the plaintiffs, testified that he acted as flagman with A. G. Herman, United States deputy mineral surveyor, when a township plat was made of township 4 south, range 18 east, and during the survey they camped on Pete Trabucco's homestead; that while he did not assist in locating the quarter corner of the south line of section 13, between sections 13 and 14, he was there when it was located; that he saw the men working in marking the corner; saw them establishing the monument; that they used rocks in making the monument; that he had visited the property, off and on, for thirty years; that he visited the place recently and pointed out where it was. This witness also described the topography of the country where the monument was located, and where it was established by the United States surveyor; that he was up there the day preceding the trial; had no difficulty in locating the monument; that it was the quarter section corner on the south line of section 13. The witness Robinson to whom we have heretofore referred further testified as to the topography of the country; also recognized the photograph of the place where the monument is located; that he had no difficulty in finding the corner; that the monument he found

there was, in his opinion, the original monument established when the Herman survey was made.

The testimony set out in the record further shows that there was practically no dispute as to the quarter corner on the north line of the section, and that following the field-notes of the survey from the north quarter corner, the south quarter corner would be, and was located at the place identified by the witnesses as hereinbefore stated, and also as found by the trial court.

As contradiction of the testimony which we have set out, the defendant called M. B. Nevins as a witness, who testified that he followed the field-notes of the United States survey, and did not find them very accurate; that in going over the field-notes he could not make them coincide with the ground. This witness further testified that the corner should be west of the position found by the trial court. The field-notes of the original survey were introduced in evidence in relation to the corner in dispute, and read as follows: "On ridge to S. W. set ¼ sec. cor. Set oak stake 4″ sq. and 4 ft. long 12″ in ground, marked ¼ S. on N. fac. Raised a md. of rocks 4 ft. in dia. at base 1½ ft. high around stake. Pits impracticable. No bearings near. Descend on N. side of ridge." This corresponds to the testimony of the witnesses as to the place where the quarter section corner monument was found.

Referring again to 9 C. J. 164, section 18, we find the following: "Original corners as established by government surveyors, if they can be found, or the places where they were originally established, if they can be definitely determined, are conclusive on all persons owning or holding with reference thereto, without regard to whether they were located correctly or not, and must remain the true corners or monuments by which to determine the boundaries. Errors of location cannot be corrected by the courts or by surveyors called on to locate government corners and lines." In the same volume, as to relocation of corners as lost corners, the rule is set forth that so long as the original corners remain marked and the monuments can be identified, the original survey is controlling.

That the location of the corner to which we have referred was the only question in dispute, satisfactorily appears from the following, which we find in the record: "Mr. Ostrander:

The only corner in dispute is the southeast corner? Mr. Lynch: That is the only corner in dispute; this corner, the southeast corner of Mr. Trabucco's place, is the corner of dispute.''

From what we have stated, it satisfactorily appears that there is sufficient testimony in the record to sustain the finding of the trial court as to the existence of the monument marking the corner in dispute, as originally located by the United States surveyor at the time of making the original location. This being true, further consideration of the cases having to do with the fixing of the boundaries, cited by the respective parties, would seem to be superfluous. We may, however, call attention to the case of *Churchill Co.* v. *Beal*, 99 Cal. App. 482 [278 Pac. 894, 897]; where this court used the following language—quoting from page 490: ''If the original survey . . . fixed the westerly boundary of the lands granted to the plaintiff and the plaintiff's grantors as found by the trial court, then and in that case,. whether the line as originally located was correct, becomes immaterial. It is the correct line in the determination of this action, as it fixes on the grounds the lands covered by the patents, the ownership of which has passed to the plaintiff in this action. The following California cases support the rules which we have just herein set forth: *Kimball* v. *McKee*, 149 Cal. 435 [86 Pac. 1089]; *Foss* v. *Johnstone*, 158 Cal. 119 [110 Pac. 294]; *Weaver* v. *Howatt*, 161 Cal. 77 [119 Pac. 519]; *Weaver* v. *Howatt*, 171 Cal. 302 [152 Pac. 925]; *Spiers* v. *Spiers*, 176 Cal. 557 [169 Pac. 73]; *Wilmon* v. *Aros*, 191 Cal. 80 [214 Pac. 962].''

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 13, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 11, 1931.