GUTHA *v.* ROSCOMMON COUNTY ROAD COMMISSION.

ROSCOMMON COUNTY ROAD COMMISSION *v.* GUTHA.

1. DEEDS—INTENT—CONSTRUCTION OF GRANT.

Ordinarily the intent which is effective in a grant is the intent expressed in the language of the grant, and such intent is ascribed by giving suitable effect to all the words of the grant, read in the light of the circumstances attending the transaction, the situation of the parties, the state of the country and the estate granted, such as its condition and occupation.

2. BOUNDARIES—CARDINAL POINTS—PRESUMPTIONS—REBUTTAL EVIDENCE.

A line described as running from a given point toward a cardinal point is presumed to run due to such latter point according to the true meridian but such presumption is rebuttable by extrinsic evidence.

3. SAME—CARDINAL POINTS—EVIDENCE AS TO EXACT DIRECTION.

In the event that exact direction line described as running to a cardinal point from a section corner is questioned, the testimony of surveyors is admissible to determine the issue presented.

4. DEEDS—LONG NARROW STRIPS—PRESUMPTIONS—DESCRIPTIONS.

Generally it will not be presumed that a party granting lands intends to retain a long narrow strip next to one of his lines; but if the courses and distances approximate closely to a line or corner of the tract owned by the grantor it will be presumed that the lines mentioned are intended to reach the corners and run with the lines of the tract especially where there is exact or substantial correspondence between the description in the deed and the description in the title papers under which the land is held.

5. BOUNDARIES—CARDINAL POINTS—GOVERNMENT SURVEY LINES.

Description in deed whereby line ran from an undisputed point, namely, the corner of a lot which was a fractional part of a section, toward a cardinal point, where grantor's tract was bounded by an eighth line which veered off slightly and surveyor testified that term "west" was a general one and followed government lines, parcel deeded plaintiff coincided with government lines and not true meridian.

6. INJUNCTION—TRESPASS—HIGHWAY OFFICIALS.

Plaintiffs are not entitled to enjoin highway officials from trespassing upon land not owned by plaintiffs.

Appeal from Roscommon; Shaffer (John C.), J. Submitted January 8, 1941. (Docket Nos. 41, 42, Calendar Nos. 41,412, 41,413.) Decided March 11, 1941.

Bill by Edward Gutha and John Gutha against Roscommon County Road Commission and others, individually and as members of the commission, to restrain trespass. Bill by Roscommon County Road Commission against Edward and John Gutha to enjoin them from obstructing an alleged highway. Cases consolidated for trial and appeal. Edward and John Gutha appeal from decree dismissing their

bill and granting relief asked by Roscommon County
Road Commission. Affirmed.

*Clark S. Gregory* and *Charles W. Austin,* for ap-
pellants.

*W. Clarence Smith* and *Charles H. Miltner,* for
appellees.

NORTH, J. These two suits arise out of the same
controversy. The suit wherein Edward Gutha and
John Gutha are plaintiffs, started June 7, 1939, is
one wherein they seek to restrain the defendants as
highway officials from trespassing upon land alleg-
edly owned by plaintiffs. The suit wherein the Ros-
common county road commission and others are
plaintiffs, started June 8, 1939, is one wherein the
plaintiffs as county road commissioners seek to en-
join defendants from obstructing an alleged high-
way. Upon hearing in the circuit court, a decree
was entered dismissing the former suit and granting
the relief sought in the latter suit. Edward Gutha
and John Gutha have appealed.

For convenience, except as otherwise specifically
indicated herein, we will treat the record on appeal
as pertaining to the suit wherein Edward Gutha
and John Gutha are plaintiffs. Decision herein turns
on the location of a lot, 75 feet by 90 feet, owned by
plaintiffs and being more particularly described as
follows:

"Commencing 1205 feet west of the northeast
corner of lot 2, section 21, town 23 north, range 3
west, for a place of beginning. Then west 75 feet,
thence south at right angles 90 feet, thence east 75
feet, thence north 90 feet, to place of beginning;
being part of lot 2, section 21, town 23 north, range
3 west."

Plaintiffs obtained title to the above-described lot from M. J. Ellsworth and Mabel Geisenhaver by quitclaim deed June 8, 1935, recorded September 29, 1936. For what reason Mabel Geisenhaver was a grantor in this deed does not definitely appear in the record; and for the purposes of this litigation M. J. Ellsworth is considered as the sole grantor in the deed through which plaintiffs took title. Ellsworth was the owner of lot No. 2 above described. The quarter section on which plaintiffs' property is located is a fractional quarter. Primarily the controversy between these litigants seems to have arisen from the fact that the southerly one-eighth line of section 21, just south of which plaintiffs' property is located, does not run due west from the starting point of the description in plaintiffs' deed, *i.e.* it does not run due west from the northeast corner of lot No. 2. Instead, this line, according to undisputed testimony of surveyors and the map of the government's survey, "runs north 89 degrees and 29 minutes west." In consequence of this line veering to the north instead of extending due west, the controversy has arisen as to where the north and south lot lines of plaintiffs' lot are located. While there is inexcusable conflict and uncertainty in the record, it appears reasonably well established that the point where the eighth line would meet the easterly boundary line of plaintiffs' property is 10.87 feet further north than the point where the line running *due* west from the northeast corner of lot 2 would meet the easterly boundary line of plaintiffs' property.

Whatever right to injunctive relief plaintiffs have in this case depends solely upon their ownership of the land described in their deed from Ellsworth. Plaintiffs do not, nor could they, assert any title by adverse possession. Decision in the instant case

turns upon the accurate location of plaintiffs' lot which is 75 feet east and west by 90 feet north and south. When plaintiffs purchased of Ellsworth, each of the four corners of the parcel to which plaintiffs now claim title was marked by a wooden stake. There is no question but that all parties to the deed under which plaintiffs hold title believed it accurately described the parcel as staked; and, prior to the construction of the highway, plaintiffs had caused a cottage to be erected on the lot. The cottage was located approximately 25 feet north of the south lot line as staked. On April 13, 1936, Ellsworth by deed conveyed to the board of county road commissioners a right of way across lot 2 of section 21. This grant of a right of way did not at all definitely fix the exact location. Instead, it provided that the width of the road ''shall not be more than 4 rods,'' and that the boundary line of the road nearest Houghton Lake ''shall not be less than 200 feet from the shore line of Houghton Lake.'' We think it a fair if not a necessary inference from the record that by the grant of this right of way the parties thereto intended it should be adjacent to the southerly boundary line of a number of lots, of which plaintiffs' is one, which Ellsworth had platted across the northerly portion of lot 2. But beyond doubt prior to the time the highway was constructed the county road commission and its agents had knowledge that plaintiffs claimed they owned the land adjacent to their cottage as the land was staked out at the time of their purchase. Plaintiff Edward Gutha, who appears to be the actual actively interested party notwithstanding his brother John is a joint owner of their lot, testified concerning the fence along the south line of the lot as staked out, as follows: ''The fence was removed as they had to if they wanted to put a roadway. I was having a

dispute at that time and disagreeing about it. They wanted me to say 'Yes' to the construction of that road and I would not do it. It was not a dispute, it was a fight.''

If in locating the property described in plaintiffs' deed the one-eighth section line is accepted as its northerly boundary, as the county road commission insist should be done, the highway as constructed does not trespass upon plaintiffs' lot. Instead, the northerly boundary line of the highway would be a fraction of a foot south of the land described in plaintiffs' deed. In this connection it should be noted that the undisputed testimony shows that the parcel of land staked out at the time plaintiffs purchased lies 40.05 feet further west than the parcel described in plaintiffs' deed.

As appears from the above, if the eighth line of the quarter section on which plaintiffs' property is located is accepted as the northerly boundary of their lot, the Roscommon county road commission in constructing this highway did not trespass upon plaintiffs' land; and in that event plaintiffs would not be entitled to any injunctive relief. But if the north line of the property described in plaintiffs' deed is fixed as coinciding with a line running *due* west from the northeast corner of lot 2 of this section 21 (the location of which point is not in dispute), then the land described in plaintiffs' deed would be located between 10 and 11 feet further south; and in that event the highway as constructed by the defendant road commission would trespass upon plaintiffs' property and plaintiffs would be entitled to injunctive relief.

So the legal question with which we are confronted is whether under the description embodied in plaintiffs' deed the ''place of beginning'' for describing their lot is a point on the one-eighth line extending

west and somewhat northerly from the northeast corner of lot 2 of section 21, or is a point located on a line extending *due* west from the northeast corner of lot 2.

Plaintiffs claim that the north and south location of the land described in their deed should be fixed according to the description in the deed by locating the north line of their lot *due* west of the northeast corner of lot 2. But defendants assert that the recital in the deed which fixes the actual point of describing the parcel conveyed to plaintiffs as "commencing 1205 feet west of the northeast corner of lot 2" means west from the northeast corner along the one-eighth line on the northerly side of lot 2, which is the fractional southeast one-fourth of the southwest one-fourth of section 21. In this connection defendants' counsel stated his position to the trial judge as follows:

"I think that west from that quarter post is ambiguous in view of the known established practice of surveying in metes and bounds description."

And the witness, a surveyor, then on the witness stand, testified: "The government considers it [west] a general term. It follows the government lines. In other words, the eighth line—"

Under the circumstances as disclosed by this record, we think defendants are correct in saying that the deed under which plaintiffs hold must be construed to mean that the northerly line of the property conveyed coincides with the northerly boundary line of lot 2, which is the south one-eighth line of section 21.

"Ordinarily the intent which is effective in a grant is the intent expressed in the language of the grant, and such intent is ascribed by giving suitable effect to all the words of the grant, read in the light of the

circumstances attending the transaction, the situation of the parties, the state of the country and the estate granted, such as its condition and occupation." Clark on Surveying and Boundaries, § 434, p. 437.

*Burgess* v. *Healey,* 73 Utah, 316 (273 Pac. 968), is a case in which the controversy was strikingly similar to that in the instant case. The defendant in that case contended that the call, to wit, "west 28 rods," should be construed to mean west according to the true meridian, *i. e.* due west; but the general government survey lines did not extend east and west in exact accord with the true meridian, and the court held that notwithstanding the call in the deed was "west 28 rods" the line was controlled by the established government survey rather than by the true meridian. The legal proposition in that case as in the instant case is this: The presumption is that a line described as running "west" runs due west according to the true meridian, but this presumption is rebuttable by extrinsic evidence. When this issue develops in a case, the testimony of surveyors is admissible to determine the issue presented. *Tacoma Bldg. & Savings Assn.* v. *Clark,* 8 Wash. 289 (36 Pac. 135).

"Generally, it will not be presumed that a party granting lands intends to retain a long narrow strip next to one of his lines; but if the courses and distances approximate closely to a line or corner of the tract owned by the grantor—especially if the description in the deed corresponds, exactly or substantially, with the description in the title papers under which the land is held—it will be presumed that the lines mentioned are intended to reach the corners and run with the lines of the tract." *Western Mining & Manfg. Co.* v. *Peytona Cannel Coal Co.* (syllabus), 8 W. Va. 406.

It is a fair inference from this record that the south eighth line of section 21 was the northerly boundary line of the land owned by Ellsworth. At least this one-eighth section line was the north boundary of lot 2 owned by Ellsworth. When he platted lot 2 into smaller parcels for sale along the north edge of lot 2 the only fair and reasonable conclusion is that he intended the eighth line should constitute the northerly line of the platted lots. Otherwise, after Ellsworth had conveyed the platted lots, he would have left a small and useless strip just north of the platted lots. At its easterly end this parcel would have come to a point at the northeast corner of Ellsworth's lot No. 2 and would have extended west 1205 feet to the location of plaintiff's property, and at this westerly end the strip would have been about 10 feet in width. And it would have extended through unoccupied land which one witness described as "swamps, pot holes and marshes." Further, it should be borne in mind that the description in plaintiffs' deed was obtained by starting at a point located in the general governmental survey—*i.e.* commencing 1205 feet from the northeast corner of lot 2, section 21, et cetera. Another persuasive circumstance disclosed by this record is that plaintiff Edward Gutha testified: "I bought land back to what is known as the north line of lot 2 in section 21." In view of the foregoing and other circumstances disclosed by this record, it must be held that the north and south location of the parcel of land described in plaintiffs' deed is to be determined with reference to the eighth line which constitutes the north boundary of lot 2 owned by their grantor. In other words the north line of the parcel deeded to plaintiffs coincides with the eighth line.

As hereinbefore stated, the undisputed evidence shows that the parcel deeded to plaintiffs is 40.05 feet further east than the lot which was marked at each of its four corners by stakes and which plaintiffs supposed was conveyed to them by Ellsworth. It follows that an accurate location of the land conveyed to plaintiffs places it at a point far enough east and far enough north so that the highway as constructed by defendants does not trespass upon plaintiffs' rights.

While the result above indicated may seem somewhat harsh as against plaintiffs who proceeded in good faith in constructing their cottage upon land to which they thought they had title, still the record discloses circumstances which indicate quite the contrary. Plaintiff, Edward Gutha, testified:

"Mr. Monte Ellsworth * * * gave me the choice of moving my house over and putting me away from that point, but that was after I had been in jail [for obstructing the highway]. Then he offered to buy me out and I would not be bought that easy. The county road commission offered to move my house after I was arrested."

Seemingly plaintiffs were insistent upon asserting supposed rights which in law they did not possess. The decree entered in the circuit court is affirmed, with costs to appellees.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred.