[Civ. No. 5331.   Fourth Dist.   Apr. 25, 1956.]

VERDI   DEVELOPMENT   COMPANY   (a   Corporation) et al., Respondents, v. DONO-HAN MINING COMPANY (a Corporation) et al., Appellants.

C. Douglas Wikle and Dell L. Falls for Appellants.

Walker, Curry, Eilers & Wehrle for Respondents.

CONLEY, J. pro tem.*—This suit was brought by Roy H. Tull and Helen Tull, the owners, and Verdi Development Company, a corporation, the lessee, of the Northeast Quarter of Section 10, Township 9 North, Range 13 West, San Bernardino Base and Meridian, against Dono-Han Mining Company, a corporation, and several individuals connected with its operations, to enjoin their continuing entry upon the land and to recover damages. The defendant corporation, having a valid mining claim on public land in the Southeast Quarter of Section 10, Township 9 North, Range 13 West, San Bernardino Base and Meridian, was carrying on operations in territory claimed by it to be in the Southeast Quarter of the section, but alleged by the plaintiffs to be in the Northeast Quarter. Upon analysis of the evidence in the light of the clear principles of applicable law, it appears that the case turns on the location of the quarter section corner on the easterly line of Section 10, for if its position is as claimed by appellants, all of the mining operations are south of the southerly boundary of the Northeast Quarter; however, if the quarter section corner was correctly placed by the respondents' surveyor, the mine is on plaintiffs' property.

The trial court found in favor of the plaintiffs, locating the southerly boundary line of the quarter section south of the mine in accordance with the testimony of their surveyor, Eugene Field, that the quarter section corner set by the original government survey in 1855 could not be found. Defendants' two surveyors, Ralph Gentry and N. P. Browne, on the other hand, accepted a pine stake appropriately marked and found in a mound of rocks as the original quarter corner set in 1855 by the government surveyor; it was 480.70 feet north of the east quarter corner marker of Section 10 set according to the proportionate method by Mr. Field.

Plaintiffs' surveyor, Eugene Field, a registered civil engineer, of Rosamond, has practiced his profession since 1929. He located the northeast corner of Section 10 by the double proportionate method and he also proportioned the distance between what he took to be the northeast and southeast corners of the section to locate what he designates as the east quarter section corner. He testified that in doing so he followed the

*Assigned by Chairman of Judicial Council.

calls set forth in the field notes of the original government survey. Mr. Field admitted that he was aware of the existence of a piece of milled pine stake one by three inches in size seen by him in a small mound of stones 13 feet west of the section line as he drew it and 480.70 feet north of the east quarter section corner which he established. There were stones "lying around in a circle" at the point in question and a part of the stake was still in the ground. The witness admitted that the stake had been there "for some time," but he did not accept it as the quarter corner.

Robert Donovan, one of the defendants interested in the mining operations, described his first view of the pine stake after a long hard search when the controversy arose relative to the location of the mine. There was also a mound of rocks there, the top portion alone being exposed, the rest buried. The pine stake was broken off, part of it remaining in the ground.

The defendants offered to prove the discovery of the stake by one Glenn Brown, whom they termed a disinterested witness, but the court said there was no question but that the stake was found at the point mentioned by Mr. Field and Mr. Donovan and that he was convinced that it was not "planted" there, that is, placed fraudulently in that position. Henry Kelsey testified that he has lived at Rosamond since 1906 "on and off" and that he first saw the wooden stake, or one that was like it in appearance, at the point described by Mr. Field in the year 1906, ". . . (j)ust a stake sticking up out of the ground about fifteen or eighteen inches, and a little pile of rocks around it." He has seen it many times since when he hunted quail or mined on that hill; he lived ". . . (r)ight close there and I have been over it many times."

Ralph Gentry of Vista, one of the surveyors called by the defendants, secured his degree as a civil engineer in 1908 in the University of Utah. He was a deputy land surveyor under contract with the federal government for about two years, and afterward acted for a time in private engineering ventures. In August, 1910, he was appointed as a surveyor by the United States government and continuously worked in the service for 35 years until October, 1945; the last official title he held was Cadastral Engineer. While he made "all kinds of surveys" during this period, the major portion of his work was on resurvey work ". . . (M)ost of my work has been investigating old surveys and making re-surveys, restoration of corners and so forth." The ". . . biggest part of the work, is trying to locate the original corners . . . irrespective

of error or anything else. . . ." In connection with his professional employment, he testified that he had had occasion to determine the methods used by the government surveyors in early days, but the court sustained an objection to further questions along this line as immaterial.

Mr. Gentry pointed out that the scribe marks on the pine stake, ¼ and S, were such as were used on similar corner markers and that the stake appeared to be 100 years old. The witness testified that he had found errors in excess of 481 feet in other government surveys and that similar mistakes in the early surveys were common. He thinks he would accept the monument with the scribed pine board as the true east quarter corner of the section and from a close study of the field notes with relation to the topography he does not believe that the southeast section corner as fixed by the surveyor, Field, is correct.

N. P. Browne, licensed surveyor and civil engineer since 1907, experienced in making land measurements in Utah, Arizona, Nevada and California since 1914, conducted a survey of the land in question for the defendants. He testified that the southeast corner of the section as fixed by Mr. Field does not correspond to the calls in the government field notes; that the location of the wooden stake answers the calls in the official notes for the east quarter corner of Section 10 and that the stake was correctly marked to indicate a quarter corner. He then testified in detail concerning the existing topography and stated that in his opinion the fixing of the southeast corner of the section by Mr. Field does not correspond with the clear descriptions, directions and distances contained in the field notes.

If the quarter corner accepted by Messrs. Gentry and Browne, the surveying experts of defendants, was in fact the original quarter corner as fixed by the official Government Survey, it would have to be accepted under the law. ▪ The original government surveys, whether they are mathematically correct or grossly erroneous, control the location and length of boundaries of sections and parts thereof and the shape and size of tracts granted to patentees.

" 'A survey of public lands does not *ascertain* boundaries; it *creates* them. *Robinson* v. *Forrest*, 29 Cal. 317, 325; *Sawyer* v. *Gray*, 205 F. 160, 163.' (*Cox* v. *Hart*, 260 U.S. 427, 436 [43 S.Ct. 154, 67 L.Ed. 332, 337]; *Harrington* v. *Boehmer*, 134 Cal. 199 [66 P. 214, 489].) "

"A section of a township is that which is laid out on the

ground, and a patentee takes only such land as is included within the survey of the plot conveyed and he cannot later question the survey as erroneous, although in fact the line in question should have been placed elsewhere.'' (*Phelps* v. *Pacific Gas & Elec. Co.*, 84 Cal.App.2d 243, 247 [190 P.2d 209].)

■ What is said in *Harrington* v. *Boehmer*, 134 Cal. 196, 199 [66 P. 214, 489], with respect to township lines is equally applicable to the lines of sections, and parts of sections:

''The question in all cases similar to this is, Where were the lines run in the field by the government surveyor? A government township lies just where the government surveyor lines it out on the face of the earth. These lines are to be determined by the monuments in the field.''

*Kaiser* v. *Dalto*, 140 Cal. 167, 172 [73 P. 828], uses the following language to the same effect:

''The lines as originally located must govern in such cases. The survey as made in the field, and the lines as actually run on the surface of the earth at the time the blocks were surveyed and the plats filed must control. The parties who own the property have a right to rely upon such lines and monuments. They must when established control courses and distances. A line, as shown by monuments . . . cannot be overturned by measurements alone.''

■ The location of the monuments placed in connection with the original survey is of primary importance; monuments control over courses, distances, lines and angles. (Code Civ. Proc., § 2077; *Weaver* v. *Howatt*, 161 Cal. 77, 80 [118 P. 519]; *Trabucco* v. *Sorrels*, 113 Cal.App. 401, 403 [298 P. 521]; *Kimball* v. *McKee*, 149 Cal. 435, 450 [86 P. 1089]; *de Escobar* v. *Isom*, 112 Cal.App.2d 172, 175 [245 P.2d 1105]; *Gordon* v. *Booker*, 97 Cal. 586, 588 [32 P. 593]; *Phelps* v. *Pacific Gas & Elec. Co. supra*, 84 Cal.App.2d 243, 248.) ■ If the monuments themselves are lost and undiscoverable, the corners at which they were originally placed should be reestablished ''in accordance with the natural objects described in the field-notes, and found to exist upon the ground, and which (are) least inconsistent with the distances mentioned in said notes and the plat of the government survey.'' (*Hiltscher* v. *Wagner*, 96 Cal.App. 66, 68 [273 P. 590].) (See also *Weaver* v. *Howatt*, 171 Cal. 302, 307 [152 P. 925]; *Weaver* v. *Howatt*, 161 Cal. 77, 86 [118 P. 519]; *Golden* v. *City of Vallejo*, 41 Cal. App. 113, 119 [182 P. 347]; *Wilmon* v. *Aros*, 191 Cal. 80 [214 P. 962]; *Kimball* v. *McKee*, 149 Cal. 435, 440 [86 P. 1089].)

Quantity is the least reliable of all descriptions of land (*Phelps v. Pacific Gas & Elec. Co., supra,* 84 Cal.App.2d 243, 248.)

█ And the proportional methods of locating lost corners must not be resorted to unless all other prescribed methods fail. (*Weaver v. Howatt, supra,* 161 Cal. 77, 84; *County of Yolo v. Nolan,* 144 Cal. 445, 448 [77 P. 1006].)

█ The foregoing review of the applicable law shows the unique and compelling importance of the question whether the pine board in the mound of rocks was in fact the monument marking the quarter corner of Section 10 as determined in the original government survey. All other questions in the case are insignificant compared with this central and determinative enquiry. And each item of legitimate evidence which if admitted might have been weighed by the trier of fact in deciding this basic question was essential proof which the party offering it had a right to place in the record. The court prevented the expert surveyors called by the defendants from giving in detail their opinions as to the fact that the wooden marker was that originally placed at the monument which they believed established the true quarter corner of the section and which, if true, places the southerly line of the northeast quarter section north of defendants' mine. The trial court sustained an objection to the question asked Mr. Gentry whether in his opinion the stake was placed in the ground in the year 1855 "on the ground it is immaterial." The defendants attempted, and offered, to prove in connection with the testimony of this witness that the stake "showed an original corner placed by the government on a government survey, and of course, as a matter of law, if that is true, this marker just has to be honored over anything else; and the age of the stake would be very material, because so far as we know, the last survey was 1855." The court sustained the objection to the offer of proof remarking: ". . . (t)he offer is disallowed. Now, that is all there is to it. I've listened very patiently at this evidence here, but I am not going to waste anybody's time, taking up to waste anybody's time, taking up stuff that don't have any weight to it."

The surveyors produced by defendants were experienced and presumably competent licensed surveyors who had worked all their lives on similar problems.

In *Richfield Oil Corp. v. Crawford,* 39 Cal.2d 729, 741 [249 P.2d 600], it is said:

"Surveyors and civil engineers, like other experts, may give testimony on questions involving matters of technical skill and experience with which they are peculiarly acquainted. (*Jenny Lind Co.* v. *Bower & Co.*, 11 Cal. 194, 197; *Byard* v. *Hoelscher*, 112 Conn. 5, 9 [151 A. 351]; *Dundalk Holding Co.* v. *Easter*, 195 Md. 488 [73 A.2d 877, 879]; *Gutha* v. *Roscommon County Road Com.*, 296 Mich. 600, 607 [296 N.W. 694]; *Zipf* v. *Dalgarn*, 114 Ohio St. 291, 295 [151 N.E. 174]; *Pennington* v. *Mixon*, 199 Ala. 74 [74 So. 238]; *Tacoma Bldg. & Sav. Assn.* v. *Clark*, 8 Wash. 289 [36 P. 135]; *Burgess* v. *Healey*, 73 Utah 316, 318 [273 P. 968]; 7 Wigmore, Evidence (3d ed.), p. 87; 11 C.J.S., Boundaries, § 107, p. 703; *contra*: *Edwards* v. *Ritter Lbr. Co.*, 163 Va. 851, 857 [177 S.E. 841]; *Vaught* v. *McClymond*, 116 Mont. 542, 555 [155 P.2d 612].) The testimony is not accepted for the purpose of varying or contradicting the terms of the deed, but to aid the trial court in its difficult task of translating the words of the deed into monuments on the surface of the earth, in accord with accepted surveying practices."

To illustrate the helpful value of the excluded evidence the court at one point refers to the piece of pine board constituting the exhibit rejected by plaintiffs' surveyor and accepted by defendants' experts as "this little stake here that he got," leading to the inference that the trier of fact was inclined to discount the theory that it was part of the original monument because of its small size; but in one of the latest official publications of the United States Department of the Interior, Bureau of Land Management, entitled "Restoration of Lost or Obliterated Corners and Subdivision of Sections" (1952 Reprint with corrections, 1955), [p. 11] illustrations of corner monuments of the public land surveys are shown and designated as "(b) wooden posts, the one on the left not much more than a twig."

At the time the stake was first referred to in the evidence the court remarked that it would be of little or no significance unless ". . . you can . . . connect it up with somebody that put it there. The reason for that, anybody could put a southeast quarter of—— on a stake and set it wherever they want it. That is why it isn't any evidence unless you can connect it up. Of course, those stakes like that, with those marks, they don't last too long anyhow out there. But I say that wouldn't be of any significance unless you find who

156

put the stake there." It is apparent that the opinion of experts such as the defendants' surveyors might well supply the missing links which the court mentioned.

Chapter IV, pages 245 to 280 of the current "Manual of Surveying Instructions" [1947] officially published by the United States Department of the Interior, Bureau of Land Management, contains detailed descriptions and requirements for the placing and construction of monuments in the process of surveying the public lands. The corresponding regulations in force in 1855, when the government's original survey of the land in question was made were, we assume, comparably voluminous and explicit. Surveyors such as the expert witnesses for the defendants who have devoted years of professional attention to the location of ancient monuments and the restoration of lost or obliterated corners should be in a position to give a helpful opinion in a case of this kind relative to the age of a questioned monument from its form, materials, weathering, scribing, persistence and present condition. And to rule out testimony which might well prove helpful or even determinative of the central question in the case under the circumstances presented by the record is unquestionably prejudicial.

The judgment is reversed.

Barnard, P. J., and Mussell, J., concurred.