Filed 9/25/24  Giordano v. Knuthson-Loomis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| DAVID R. GIORDANO, as Trustee, etc., et al., | C099056 |
| Plaintiffs and Appellants, | (Super. Ct. No. 18CV03568) |
| v. | |
| MERLE KNUTHSON-LOOMIS, | |
| Defendant and Respondent. | |

This is an appeal from a judgment after remand of a quiet title claim involving a boundary dispute between two landowners in rural Butte County.  In our prior opinion, we affirmed the portion of the judgment granting to plaintiffs David R. and Elizabeth G. Giordano, as trustees of the D & E Giordano Revocable Family Trust (collectively, Giordano) a prescriptive easement to use a dirt road/trail that traverses defendant Merle Knuthson-Loomis's (Loomis) property.  (*Giordano v. Knuthson-Loomis* (Apr. 13, 2022, C094036) [nonpub. opn.] [2022 Cal. App. Unpub. LEXIS 2226] (*Giordano I*).)  However, we reversed and remanded for retrial the portion of the judgment establishing the location of the boundary between their properties and quieting title to the disputed

1

property in favor of Giordano.  (*Ibid.*)  On remand from our prior decision, the trial court found in favor of Loomis, quieting title to the disputed area and fixing the location of the boundary as depicted in a 2020 record of survey (200 R/S 32) prepared by Hamilton Engineering, Incorporated (Hamilton Engineering).

Giordano appeals from the judgment after remand, contending that the trial court erred in relying on the Hamilton Engineering record of survey to locate the common corners between the Loomis and Giordano parcels.  Giordano argues that because the locations of the monuments from the original government surveys are unknown, the corners should have been deemed "lost" and reestablished by proportionate measurement from the nearest identified corners.  Loomis responds that Hamilton Engineering properly determined the location of the common corners based on recorded indentures and deeds of prior landowners as well as other reliable evidence.  We agree with Loomis, and therefore affirm the judgment, with minor modifications.

## BACKGROUND

Loomis is the fee title owner of an approximately 5.71-acre parcel of property (assessor parcel number (APN) 066-470-011) located in the town of Magalia, in rural Butte County (the Loomis parcel).  (*Giordano I, supra*, C094036.)  The Loomis parcel is configured roughly in the shape of an "L."  (*Ibid.*)  The vertical stem of the "L" lies to the west of "New Skyway" public road in the western portion of Lot 1, Section 31.  (*Ibid.*)  The horizontal base of the "L" is "oriented in an east-west direction and straddles a public road known as New Skyway."  (*Ibid.*)  The portion of the Loomis parcel extending east of New Skyway is a relatively small strip of land surrounded by parcels of land owned by Giordano, including an approximately 10-acre parcel (APN 066-470-030) to the north (the Giordano parcel).  (*Ibid.*)  The parties disagree as to the location of the common boundary between the Giordano and Loomis parcels, which, according to the parties' respective deeds, is collinear with the common boundary between Lots 1 and 2 in Section 31.

2

In 2018, Giordano filed an action for a prescriptive easement to use a narrow dirt road/trail that traverses the Loomis parcel at several locations. (*Giordano I, supra*, C094036.) Loomis answered the complaint and cross-complained for trespass damages and declaratory relief regarding the disputed boundary line. (*Ibid.*)

After a bench trial, the trial court granted Giordano a prescriptive easement, resolved the boundary dispute in Giordano's favor, and denied Loomis's trespass cause of action. (*Giordano I, supra*, C094036.) Loomis appealed. (*Ibid.*) On appeal, we upheld the portions of the judgment granting a prescriptive easement and denying the trespass claim but reversed and remanded for retrial of the quiet title claim involving the boundary line dispute. (*Ibid.*)[1]

On retrial, the trial court sought to determine the location of the property line separating the Giordano and Loomis parcels. The dispute centered around an apparent conflict between the legal descriptions in the parties' respective deeds. Specifically, based on the course and distance calls in the Loomis deed, the northeastern corner of the Loomis parcel is located about 114 feet north of that parcel's southern boundary. However, based on the Giordano deed, the northeastern corner of the Loomis parcel is only about 45 feet north of the Loomis parcel's southern boundary. Thus, the property descriptions in the deeds overlap by as much as 69 feet.

In construing the description in a deed, the object of the court is to ascertain the intention of the parties at the time of the conveyance. (*Santa Cruz v. Younger* (1963) 223 Cal.App.2d 818, 821; *Hyman v. Haun* (1961) 191 Cal.App.2d 891, 896; *Machado v. Title Guarantee & Trust Co.* (1940) 15 Cal.2d 180, 186.) "Whenever possible, a court should place itself in the position of the parties and ascertain their intent, as in the case of

---

[1]    This court considered appellants' request to take judicial notice of the record of the previous appeal in *Giordano I* as a motion to incorporate the record by reference, and as such granted the request.

3

any contract." (*Machado, supra*, at p. 186.) "The language of the instrument is to be first considered, and the intention of the parties gathered therefrom, before resorting to extrinsic evidence [citation] but the instrument may be explained by reference to the circumstances under which it was made, and the matter to which it relates. [Citation.]" (*Buffum v. Texaco, Inc.* (1966) 241 Cal.App.2d 732, 734; *Marlin v. Robinson* (1932) 123 Cal.App. 373, 375.)

Code of Civil Procedure section 2077 sets forth "rules for construing the descriptive part of a conveyance of real property[] when the construction is doubtful and there are no other sufficient circumstances to determine it . . . ." (Code Civ. Proc., § 2077.) Among other things, Code of Civil Procedure section 2077 provides: "When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount." (*Id*. at subd. (2).)

In this case, Giordano relied on Code of Civil Procedure Code section 2077 to argue that the Loomis deed's call to the northern boundary of Lot 2—as depicted in two records of survey prepared by Gary Lippincott (120 R/S 30 & 96 R/S 25)—was a call to an "ascertained" boundary that should prevail over the Loomis deed's course and distance call. Loomis disputed the private surveys on which Giordano relied and claimed that the boundary instead should be located as depicted on a record of survey prepared by Brien Hamilton (Mr. Hamilton) (200 R/S 32).

"Under California law, the location of a disputed boundary line is proven by retracing, as nearly as possible based upon existing evidence, the footsteps of the original surveyor whose survey fixed the boundaries. [Citations.]" (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 736 (*Bloxham*).) " ' "A survey of public lands does not ascertain boundaries; it creates them. [Citations.]" ' [¶] 'A section of a township is that which is laid out on the ground, and a patentee takes only such land as is included within the survey of the plot conveyed and he cannot later question the survey as erroneous,

4

although in fact the line in question should have been placed elsewhere.' [Citation.]" (*Verdi Development Co. v. Dono-Han Mining Co.* (1956) 141 Cal.App.2d 149, 152-153 (*Verdi*), italics omitted.)  The government later "may resurvey its lands for purposes of its own information or to locate adjoining boundaries, and in doing so may locate boundaries in new and different places and thus correct an erroneous survey, but . . . in doing so the rights of those who have acquired an interest in lands with reference to the original survey may not be . . . affected.  [Citations.]"  (*Phelps v. Pacific Gas & Electric Co.* (1948) 84 Cal.App.2d 243, 248; 43 U.S.C. § 772; see also *Bloxham, supra*, at pp. 736-737 [any private surveyor who undertakes to re-establish or relocate lines or corners " ' "should endeavor as nearly as possible to follow in the footsteps of the surveyor who made the last accepted government survey . . . ." ' "].)

As relevant here, the evidence showed that the boundaries for Lots 1 and 2 were first established by the original government surveys and related plat for Township 23 North, Range 4 East, Mount Diablo Meridian.  Per the 1875 Government Land Office plat, Section 31 is a square, divided into four quarters, with four lots (Lots 1 through 4) arranged vertically (top to bottom) along the western edge of the section.  (43 U.S.C. § 751.)  While each lot *appears* on the plat to have the same north/south dimensions, equal to 20 chains or 1,320 feet, the plat is not dispositive on the shape and size of tracts granted to patentees.  Even when plats were *drawn* as squares, physically on the ground they often were not.  (*Luginbuhl v. Hammond* (1960) 179 Cal.App.2d 350, 354 [noting the inaccuracy of early government surveys is a matter of common knowledge].)  The question in any boundary dispute is where were the lines run in the field because " '[a] government township lies just where the government surveyor lines it out on the face of the earth.' " (*Verdi, supra*, 141 Cal.App.2d at p. 153.)  Thus, when there is a discrepancy between the lines run in the field and the government plat, the plat must yield. (*Harrington v. Boehmer* (1901) 134 Cal. 196, 199; *Verdi, supra*, at p. 153.)

5

In tracing the footsteps of the original surveyor, " '[t]he location of the monuments placed in connection with the original survey is of primary importance . . . .' " (*Bloxham, supra*, 228 Cal.App.4th at p. 742.) "[T]he physical monument, even if it should have been placed elsewhere, is controlling." (*Claudino v. Pereira* (2008) 165 Cal.App.4th 1282, 1287.)

When the original monument cannot be found, the surveyor should endeavor to reestablish it, if possible, from traces of the monument or its accessories, or from other acceptable evidence or testimony bearing upon its original position. (*Bloxham, supra*, 228 Cal.App.4th at pp. 745, 747-749; *Chandler v. Hibberd* (1958) 165 Cal.App.2d 39, 52, 57 (*Chandler*); *State of California v. Thompson* (1971) 22 Cal.App.3d 368, 377.) The "obliteration" of a monument does not destroy the survey nor justify a court in disregarding it where its position can be determined either from traces of the original marks or from acceptable evidence or testimony that bears upon the original position. (*Bloxham, supra*, at p. 748; *Chandler, supra*, at p. 52.)

When the original position of a monument cannot be determined by acceptable evidence or testimony, it is considered a "lost" corner. (*Bloxham, supra*, 228 Cal.App.4th at p. 748; *Chandler, supra*, 165 Cal.App.2d at pp. 51-52.) The position of a "lost" corner can be restored only by proportionate measurement between the nearest identified corners, giving equal weight to all parts of the line in accordance with the record of the original survey. (*Chandler, supra*, at pp. 51-52; Request for Judicial Notice of Manual of Surveying Instructions (Manual of Surveying Instructions), Chapter VII, Section 7-1 to 7-7, pp. 165-166.)[2]

---

[2]    We grant Giordano's request for judicial notice of the Manual of Surveying Instructions for the Survey of Public Lands of the United States, 2009 edition, available at https://www.blm.gov/sites/blm.gov/files/Manual_Of_Surveying_Instructions_2009.pdf (last visited September 25, 2024).

*Testimony of Timothy Giordano*

At trial, Timothy Giordano (Mr. Giordano), a licensed surveyor and plaintiff David Giordano's cousin, testified as the plaintiffs' land surveying expert. Mr. Giordano testified that he did not find any original monuments or accessories for the common corners of Lots 1 and 2, and therefore considered them to be "lost" corners. To reestablish the location of the "lost" corners, Mr. Giordano relied on a 1990 Gary Lippincott (Lippincott) survey of the Giordano property (120 R/S 30), which, in turn, relied on an earlier 1984 Lippincott survey (96 R/S 25). Mr. Giordano testified that the 1984 Lippincott survey properly followed the requirements of the Manual of Surveying Instructions to reestablish the "lost" corners using the proportionate measurement method. Specifically, Lippincott measured the distance between identified reference points for the northwest corner and west quarter section corner of Section 31 and found it to be approximately 2,341 feet. Using this measurement, he determined that the southwest corner of Lot 1 should be reestablished halfway between the identified corners, i.e., approximately 1,171 feet north of the west quarter section corner. (The mid-point along the edge of a section is called a quarter section corner. The mid-point of a quarter section is called a one-sixteenth section corner.) Using the same process, Lippincott determined that the "lost" southeast corner of Lot 1 should be reestablished approximately 1,178 feet north of the northwest one-sixteenth corner. Lippincott then set new monuments at these respective locations.

Relying on the 1984 and 1990 Lippincott surveys, Mr. Giordano determined that the south line of the Giordano parcel intersects the west edge of Section 31 approximately 1,171 feet north of the west quarter section corner. And, having determined this to be the "ascertained" boundary between Lots 1 and 2, Mr. Giordano opined that the boundary call in the Loomis deed—i.e., to the "North line of Lot 2"—must prevail over its inconsistent course and distance description in the deed.

7

Mr. Giordano plotted a map of the Loomis parcel giving controlling effect to the boundary call but otherwise adhering to the course and distance calls in the deed. His map had the effect of reducing the length of the eastern boundary of the Loomis parcel by approximately 69 feet and the western boundary of the Loomis parcel by approximately 130 feet. Mr. Giordano admittedly did not compare his map of the Loomis boundaries to the conditions on the ground to determine whether the new boundary lines would cut through Loomis's existing house, fence, or driveway. Nor did he check to see whether his map was consistent with the property lines of the adjoining property owners west of New Skyway.

Mr. Giordano testified that he reviewed the deeds in the chain of title for the Giordano parcel, but he did not express any opinion about where the prior owners may have located the common boundary of Lots 1 and 2. The only prior deed in the Giordano chain of title that he discussed was a quitclaim deed conveying (with certain exceptions not relevant here) the "South One-half of Lot One," east of New Skyway, to David L. Levering, et al. in 1984.

*Testimony of Mr. Hamilton*

Mr. Hamilton, a licensed surveyor, testified as defendant's surveying expert. Like Mr. Giordano, Mr. Hamilton was unable to locate the original monuments for the common corners of Lots 1 and 2. Nevertheless, Mr. Hamilton testified that he was able to locate the boundary between the Loomis and Giordano parcels based on (1) the prior owners' recorded indentures and grant deeds, (2) the direction and distance calls in the Loomis deed, and (3) the location on the ground of Loomis's house, driveway, and fence line.

Regarding Lot 2, Mr. Hamilton testified that the prior owners' recorded indentures and grant deeds showed the following: In 1882, shortly after the original government survey was completed, Cohn granted to Perry a portion of Lot 2 "[b]eginning at the North West corner of Lot Two." In 1933, Perry conveyed the northwest portion of Lot 2 to

8

Wright in an indenture that described the northern line of Lot 2 as located "108 feet, more or less" to the north of "M.A. Glover's Lot," the current site of the Magalia Community Church. Later that same year, Wright conveyed that same parcel to Morehead. Mr. Hamilton testified that the description of the property in these conveyances is consistent with the northwest corner of Lot 2 being located about 1,275 feet north of the west quarter section corner.

Regarding Lot 1, Mr. Hamilton testified that in 1927 Warren conveyed to Morehead a parcel of land in Lot 1—roughly corresponding to the northwest portion of the current Loomis parcel—by way of an indenture that identified the southwest corner of the parcel at a "point of beginning as being 1275 feet north of. . . the western quarter corner . . . ."

Subsequently, in 1955, Morehead combined the two previously separate lots into one property description in connection with a decree quieting title. Around the same time, Morehead conveyed the combined property by grant deed to Loomis's predecessor. Both the 1955 decree and the 1955 grant deed contain the same property description as the current Loomis deed.

Based on the prior recorded indentures and grant deeds, Mr. Hamilton determined that the prior owners (and the court issuing the decree quieting title) located the southwest corner of Lot 1 (northwest corner of Lot 2) on the western edge of Section 31 at a distance 1,275 feet north of the west quarter section corner, as depicted on Hamilton Engineering's 2020 record of survey (200 R/S 32).

Tracing the direction and distance calls in the Loomis deed, Mr. Hamilton found that the southwest corner of the parcel, as described in the deed, matched the location identified by the prior owners' recorded indentures and deeds. In addition, the property description "closed" (by returning to its point of beginning without substantial error) and the quantity of acreage enclosed was consistent with that described in the deed ("5.71

acres more or less").[3]  Conversely, he testified that if the common boundary intersects the west edge of the section at a distance 1,171 feet north of the west quarter section corner, as Giordano claims, the Loomis deed's property description would not close (without ignoring the direction and distance calls), and the enclosed acreage would be significantly less than what was specified in the deed.

Further, if Giordano's claim is correct, tracing the Loomis deed's property description would result in a roughly 100-foot gap of unowned property between the Loomis parcel and her northern neighbors on the west side of New Skyway.  This would conflict with a 1978 Lippincott record of survey (64 R/S 31), which depicts the northwest corner of the Loomis parcel at a point 1,549.05 feet north of the west quarter section corner, consistent with Hamilton Engineering's record of survey (200 R/S 32).  It also would mean that Loomis's driveway would not be on her property, her property line would pass through the center of her house, and the fences outlining her property would no longer match her property description.

After considering the evidence, the trial court ruled in favor of Loomis, finding the common boundary between the Loomis and Giordano parcels is 1,275 feet north of the west quarter section corner, as shown on Hamilton Engineering's 2020 record of survey (200 R/S 32).  Giordano timely appealed the court's judgment.

DISCUSSION

On appeal, Giordano argues that the trial court erred in relying on Hamilton Engineering's 2020 record of survey (200 R/S 32) to locate the boundary between the Loomis and Giordano parcels.  Giordano contends that because the original survey

---

[3]  Technically, tracing the direction and distance calls in the deed would place the eastern boundary of the Loomis parcel 1,320 feet to the east.  But Mr. Hamilton instead accepted the eastern boundary of the Loomis parcel at the "East line" of Lot 2, about 1,215 feet from the western boundary.  For this reason, title to the property lying east of the "East line" of Lot 2 is not at issue.

10

monuments and accessories could not be found, and there were no witnesses who could testify to their original location, the Manual of Surveying Instructions required that the common corners of Lots 1 and 2 be deemed "lost" and relocated by proportionate measurement, as was done in Lippincott's 1984 record of survey (96 R/S 25). Instead, Mr. Hamilton relied on distance and direction calls from "irrelevant" indentures and deeds, as well as a court decree quieting title, to reestablish the corners. Because Mr. Hamilton did not follow the Manual of Surveying Instructions, Giordano contends the Hamilton survey was legally insufficient as a matter of law and therefore the court's judgment must be reversed.

We disagree that the Hamilton Engineering record of survey (200 R/S 32) was legally insufficient because he did not treat the common corners of Lots 1 and 2 as "lost" and relocate them using proportionate measurement. Although the evidence established that the corners were not "existent" corners, this does not mean that they were "lost."

As discussed above, "[a] *lost corner* is one whose original position can[]not be determined by substantial evidence, either from traces of the original marks or from acceptable evidence or reliable testimony that bears upon the original position, and whose location can be restored only by reference to one or more interdependent corners." (Manual of Surveying Instructions, Chapter VII, § 7-2, p. 165; see *Chandler, supra*, 165 Cal.App.2d at p. 52; *Bloxham, supra*, 228 Cal.App.4th at p. 748.) An "obliterated" corner, by contrast, is one in which evidence of the original survey has been destroyed or is missing, but for which the position (or approximate position) can be located by reference to existing data or sources of information. (*Chandler, supra*, at p. 52; *Bloxham, supra*, at pp. 747-748; *Reid v. Dunn* (1962) 201 Cal.App.2d 612, 614, fn. 2; *Hammond Lumber Co. v. Haw* (1929) 96 Cal.App. 390, 394.) A corner is merely "obliterated," not "lost," if its position "has been perpetuated, or . . . may be recovered, by substantial evidence from the acts or reliable testimony of the interested landowners, competent surveyors, other qualified local authorities, or witnesses, or by some acceptable record

11

evidence."[4]  (Manual of Surveying Instructions, Chapter VI, § 6-17, p. 149; § 7-2, p. 165; *Bloxham,* at p. 748; *Chandler,* at p. 52; *Reid v. Dunn, supra*, 201 Cal.App.2d at p. 614, fn. 2.)

It is settled law that the proportionate measurement method of relocating "lost" corners is used "only as a last resort when the original corner is 'lost' and cannot be relocated on the ground.  [Citations.]"  (*State of California v. Thompson, supra*, 22 Cal.App.3d at p. 377; *Bloxham, supra*, 228 Cal.App.4th at p. 749; *Chandler, supra*, 165 Cal.App.2d at p. 51; *Verdi, supra*, 141 Cal.App.2d at p. 154.)  A corner should not be regarded as "lost," therefore, until every reasonable method of identifying its original position has been exhausted.  (Manual of Surveying Instructions, Chapter VII, § 7-1, p. 165; *Bloxham, supra*, at pp. 748-749; *Chandler, supra*, at p. 51; *Curtis v. Upton* (1917) 175 Cal. 322, 333.)

Here, Mr. Hamilton determined the location of the common corner of Lots 1 and 2 based on the legal descriptions in the recorded instruments of prior landowners, who may be presumed to have exercised due diligence and care in the ascertainment of their boundaries.  The recorded instruments—dating as far back as 1882—show that the prior owners located the common westerly corner of Lots 1 and 2 at a distance of 1,275 feet north of the west quarter section corner.  Mr. Hamilton also determined that the location of this corner was consistent with (1) the distance and direction calls in the Loomis deed and the decree quieting title, (2) the quantity description in the Loomis deed, (3) the 1978 Lippincott record of survey (64 R/S 31), and (4) the location on the ground of Loomis's house, driveway, and property fence lines.

---

[4]  Giordano argues that *Bloxham, supra*, 228 Cal.App.4th 729, suggests the evidence must be sufficient to prove the location of an obliterated corner "beyond reasonable doubt," however this contention appears to rest on a superseded version of the Manual of Surveying Instructions.  (Cf. *id.* at p. 748, with Manual of Surveying Instructions, Chapter VII, § 7-2, p. 165 & Chapter VI, § 6-17, p. 149 [referring to "substantial evidence"].)  For this reason, we are not applying a "reasonable doubt" standard.

In our view, this was substantial evidence sufficient to prove the true or approximate location of the obliterated corner. (See *Howard v. Cunningham* (1918) 36 Cal.App. 229, 231, 233.) We reject Giordano's suggestion that the only acceptable evidence to establish the location of an obliterated corner is testimony from a witness with knowledge of the location of the original monuments or their accessories. The Manual of Surveying Instructions shows this is incorrect. There is no fixed rule as to what constitutes sufficient evidence of an obliterated corner's position; it can be proven by any manner of relevant evidence that a reasonable mind might accept as adequate, including collateral evidence of good faith reliance on the original survey position. (Manual of Surveying Instructions, Chapter VI, §§ 6-17 to 6-49, pp. 149-157; see also *id*., § 6-11, p. 148, § 6-15, p. 149; *Chandler, supra*, 165 Cal.App.2d at p. 55.) Thus, we conclude the trial court did not err in relying on the Hamilton Engineering record of survey (200 R/S 32) to relocate the boundary between the Loomis and Giordano parcels.

Moreover, even if we were to agree with Giordano that the common corners were "lost" prior to Lippincott's 1984 record of survey (96 R/S 25), we would still find no basis to reverse the judgment. That is because, if the common corners were "lost" at the time of conveyance of the Loomis parcel, there was no "ascertained" boundary, and therefore no reason to presume the parties to the deed intended the boundary reference to prevail over the "inconsistent" call for distance. (Code Civ. Proc., § 2077; *Goss v. Golinsky* (1909) 12 Cal.App. 71, 74-75; *Luginbuhl v. Hammond, supra*, 179 Cal.App.2d at p. 354; see *Freeman v. Affiliated Property Craftsmen* (1968) 266 Cal.App.2d 723, 729.) In such a scenario, the dispute between Loomis and Giordano would boil down to a priority dispute between the competing deeds. On this record, Loomis clearly wins that battle by virtue of the 1955 decree quieting title.

13

## DISPOSITION

The judgment is affirmed, with directions to modify the judgment to clarify that Loomis is the lawful owner of the disputed portion of the Loomis parcel extending east of New Skyway, as depicted in the Hamilton Engineering record of survey (200 R/S 32) attached as Exhibit 3 to the judgment, and that the legal description of Giordano's property, described in Exhibit 1 to the judgment, is amended to conform to the boundary of the Loomis parcel so depicted. Loomis shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

\s\ ,
Krause, J.

We concur:

\s\ ,
Hull, Acting P. J.

\s\ ,
Feinberg, J.

14