[Civ. No. 10016. Third Dist. May 9, 1961.]

FRANK J. HYMAN et al., Appellants, v. HELEN G. HAUN, Respondent.

Rawles, Nelson & Golden for Appellants.

Leo M. Cook for Respondent.

SCHOTTKY, J.—Frank J. Hyman and Nellie Howard Hyman, his wife, brought this action to quiet title against Helen G. Haun to a strip of land adjacent to the south bank of the Noyo River in Mendocino County. The court refused to quiet title to the land in the Hymans and this appeal followed.

The property involved in this litigation at one time belonged to Ralph W. Todd, the father of Helen G. Haun. Prior to his death Ralph W. Todd sold certain parcels of land abutting the high-water line of the south bank of the Noyo River to third parties not involved in this action. After his death the Hymans and some people named Penitenti acquired a tract of land from his estate. (The Penitenti interest has been acquired by the Hymans.) The remainder of the land was distributed to certain heirs of the deceased, including Helen G. Haun. She later acquired the interest of the other distributees.

It appears that prior to the execution of the deed the administratrix of the Todd estate made arrangements with the Hymans and the Penintentis to sell them 10 acres off of the north end of the estate property. A licensed land surveyor by the name of William K. Dodge was employed and instructed to prepare a map and a description. He did not make any survey but had maps from which he did his work, and he mapped out a tract of land containing exactly 10 acres.

However, the north line he took did not go to the high-water mark of the river, but it went to an old meander line, which along the west side of the description lacks 124 feet from going to the high-water mark. At a later date one Maguire surveyed the lines laid out by Dodge, and it is shown that at no place did such description reach said high-water mark. In due time a deed was made by the administratrix to Mr. Penitenti, the predecessor in interest of the plaintiffs, which deed contained the following description:

"All that certain real property situate in Section 18, Township 18 North, Range 17 West, Mount Diablo Base and Meridian, in the County of Mendocino, State of California, more particularly described as follows, to-wit:

"Beginning at a point in the Easterly boundary of State Highway No. 1 (1-Men-56-E) from which the Southwest corner of said Section 18 bears South 0° 37' 33" West, 2621.03 feet distant. Also, from said point of beginning a copper wire in center of a 6 inch square concrete monument 4 inches out of ground, 50 feet distant at right angles Easterly of Engineer's Station 500 + 23.01 E. C. on the centerline survey of said State Highway, bears South 7° 48' 30" West, 29.00 feet distant; thence from said point of beginning and along the exterior boundary lines of the land to be described as follows:

"North 7° 48' 30" East, along the East boundary of said State Highway, 1169.00 feet to highwater line on the Southerly side of Noyo River; thence along said highwater line as follows: South 76° 00' East, 230.00 feet; thence South 3° 00' East, 693.00 feet; thence South 24° 00' East, 545.40 feet; thence leaving said highwater line, North 82° 11' 30" West, 646.08 feet to the point of beginning, containing a calculated area of 10.00 acres, more or less."

Thereafter the plaintiffs, claiming that the north line of the land conveyed to them was the high-water mark of the Noyo River and not the meander line fixed by Dodge, brought suit against the defendant to quiet their title herein to the following described property:

"Beginning at a point in the Easterly right of way line of State Highway No. 1 (1-Men-56-E), said point being S 82° 11' 30" East 50 feet from Engineer's Station 500 + 52.01 P.O.T. and from which point the southwest corner of Section 18, Township 18 North, Range 17 West, M. D. M. bears South 0° 37' 33" West, 2621.03 feet; thence from said point of beginning, North 7° 48' 30" East along the East line of

said Highway 1302.77 feet to the ordinary high water mark of the southerly side of Noyo River as said ordinary high water mark was established by the State Lands Commission and as shown on Sheets 1 to 9 of Map Case 1, Drawer 10, Page 42, Mendocino County Records, said East line of Highway crossing the ordinary high water mark between stations S 11 and S 12 of said Survey; thence following along the ordinary high water mark Southeasterly to a point S 82° 11′ 30″ E from the point of beginning; thence N 82° 11′ 30″ west to the point of beginning.''

It should be pointed out that this latter description does not close at the southeast corner.

At the beginning of the trial plaintiffs filed an amended complaint. This time they excluded from the land they claimed certain property lying along the high-water mark of the Noyo River which had been sold by Ralph W. Todd to third persons. In the amended complaint the distance along the east line of the highway to the ordinary high-water mark of the southerly side of the Noyo River was 1,293 feet instead of 1,302.77 feet as in the original complaint. It should be noted that the only way the description in the amended complaint closes is by the setting up of some arbitrary lines which find no evidentiary support in the record.

The foregoing descriptions and the contentions of the parties are graphically illustrated in plaintiffs' Exhibit 12, a facsimile of which is here reproduced.*

This map shows that the land described in plaintiffs' original complaint is approximately 17 acres and that the land described in the amended complaint is approximately 14 acres, while the land described in the deed from the Todd estate to plaintiffs' predecessors in interest amounts to 10 acres.

The dispute arises from the fact that the high-water line of the Noyo River is some 1,293 feet from the point of beginning, not some 1,169 feet as described in the deed. If the high-water line is used, and the property previously conveyed is excluded, the area described is approximately 14 acres. If the metes and bounds calls are used, a parcel of land of about 10 acres is produced. If the high-water mark is used, it cuts into property conveyed by the decedent to third parties prior to the time either of the parties involved in this suit acquired their title.

Appellants' main contention is that the court should have

*See next page.

MAP SHOWING
HYMAN–PENITENTI PROP.
& ADJACENT PROPERTY
NOYO, CALIF.
SCALE 1"=50' OCT. 23, 1957

quieted title in them to the disputed strip. The basic rule of construction of the description in a deed is that the construction must accord as nearly as possible with the intent of the parties but be limited to that manifested in the language of the deed. (3 American Law of Property, § 12.110; 15 Cal.Jur.2d, Deeds, § 173.) It should also be noted that any rules for awarding priorities, as for example, monuments over distances, have been developed as a means for determining the intention of the parties and are rules of construction rather than rules of property. (3 American Law of Property, § 12.115.)

 From the description in the deed an ambiguity appears when the call to the high-water line of the Noyo River is used. The distance from the point of beginning to the high-water mark is greater than is called for in the deed. The calls after the high-water line is reached do not agree with the description in the deed, and if the high-water mark is literally followed it would include property previously sold. In their amended complaint the appellants excluded that portion of the high-water line on which the property of these third persons is located. It is clear from the calls of the deed that no reference is made to the property of third persons. If one follows the calls of the deed to the high-water mark and then uses that as the boundary, it is clear that the only way the description closes is by using an arbitrary call point. The deed from the Todd estate to Penitenti, the predecessor in interest of appellants, contained the same description contained in the published notice of sale in the probate proceeding. The testimony of the surveyor was that he was instructed by the attorney for the estate to cut out a 10-acre plot.

The conclusion of the trial court as expressed in its memorandum opinion was as follows:

". . . After the trial of the case on its merits, a number of joint conferences with counsel, and the study of the able briefs filed by the latter, the Court is unable to determine just what land the plaintiffs do own at this spot. The Court has come to the conclusion that it will take an action to reform a deed or an action in rescission or some such action, other than the one before the Court, to determine the controversy between the parties. . . .

". . . There is no doubt that the parties intended to deed a parcel of land containing 10 acres, and substantially no more. It is further clearly enough shown that if plaintiffs succeed in quieting title to the land described in their amended

complaint they will be getting 14 acres, or more, of valuable land. This is not a case where a certain piece of land was laid out and then the acreage therein was estimated, but, on the other hand, the intention was to sell 10 acres, and the description tailored to fit that.

"It seems to be agreed among the parties that the intent of the parties should prevail, since the defendant definitely states that, and the plaintiffs suggest that the Court put itself in the position of the parties when they made this deal. And when this is done, the Court concludes that it was not the intention of any of the parties, at any time, that the description should contain more than 10 acres of land. The Court concludes that the plaintiffs are seeking to quiet title to more land than they own. The burden of proof is upon them to establish their claim. This they have not done to the satisfaction of the Court. Conceeding [*sic*] they own some land, it is impossible for the Court to determine just what land they do own, and, under the pleadings and the evidence herein, does not permit any other decision in the case. Therefore, the judgment will have to be that plaintiffs take nothing herein; and it will, also, have to adjudge that defendant is not entitled to the affirmative relief asked in the prayer of her answer. . . ."

The court found that "it was the intent of the plaintiffs Hyman and Penitenti and the predecessor of defendant Helen G. Haun as represented by Alma D. Todd, Executrix of the estate of Ralph W. Todd that ten acres of land and no more be conveyed to the plaintiffs Hyman and Penitenti; it is true that the lands described in plaintiffs' first amended complaint contain 14 acres, more or less in area; it is true that plaintiffs have not sustained their burden of proof as to just what lands they do own." The court then concluded that "Defendant is entitled to judgment that plaintiffs take nothing by their action. . . ."

Appellants sought to quiet title to the real property described in their amended complaint amounting to 14 acres. They did not seek to reform the deed under which they acquired title. They had the burden of proving that their deed included the property described in their complaint. ▆ As stated in 41 California Jurisprudence 2d, section 68, at page 556: "One of the best known doctrines in the trial of quiet title actions is that the plaintiff must recover on the strength of his own title, not on the weakness of the defendant's title." ▆ The trial court found that they had not

met that burden and there is substantial support in the record for that finding.

Appellants ask this court to make findings under the provisions of section 956a of the Code of Civil Procedure to support the conclusions of appellants. ■ ''The legislation . . . which gives appellate courts evidence-taking and fact-finding powers . . . does not convert the appellate courts into triers of facts or abrogate the general rule that findings of the trial court based on substantial evidence are conclusive on appeal. ■ The purpose of section 956a is to enable appellate courts, in appropriate cases, to terminate litigation by affirmance, or modification and affirmance, of the judgment, or by reversal with directions to enter judgment for appellant if it appears that on no reasonable theory could respondent make a further showing in the trial court.'' (*People* v. *Benford*, 53 Cal.2d 1, 6 [345 P.2d 928].)

■ We think it is clear from what we have hereinbefore set forth that the instant case is not one in which this court should make a finding which would in effect reverse the judgment of the trial court and appellants' request is therefore denied.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied June 1, 1961, and appellants' petition for a hearing by the Supreme Court was denied July 5, 1961.