[Sac. No. 1087.    Department Two.—August 18, 1904.]

COUNTY OF YOLO, Appellant, v. ISABELLA NOLAN et al., Respondents; D. N. HERSHEY, Appellant.

PUBLIC LANDS—GOVERNMENT SURVEY—RETRACING OF LINES—INAPPLICABLE RULE—DUTY OF SURVEYOR TO FOLLOW FIELD-NOTES.—In retracing the lines of a government survey of public lands the rule as to restoring lost corners by putting them at an equal distance between known corners has no application if the line can be retraced as it was established in the field. The field-notes should be taken and, from the courses and distances, natural monuments or objects, and bearing trees described therein, the surveyor should endeavor to fix the line precisely as called for in the field-notes, and to retrace the steps of the man who made the original survey, without regard to the equality of subdivisions in acres; and if the line can be thus located, it must control.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. E. E. Gaddis, Judge.

The facts are stated in the opinion.

E. R. Bush, District Attorney, for County of Yolo, Appellant.

Hudson Grant, for D. N. Hershey, Appellant.

R. Clark, for Respondents.

COOPER, C.—Action to quiet title. The case was tried before the court, findings filed, and judgment ordered and entered in favor of defendants other than Hershey. This appeal is from the judgment and order denying the motion of appellants for a new trial. The issue involves the title to a strip of land one mile in length north and south and twenty feet wide. It is stipulated that appellant Hershey is the owner of the east half of the west half of section 24, township 12 north, range 1 west, Mount Diablo base and meridian, and that the respondents are the owners of the west half of the west half of the same section. The plaintiff claims to be the owner of a right of way over the strip, through a conveyance from Hershey; but its claim must fail if Hershey has no title. It is thus evident, in view of the stipulation, that the evidence and discussion in the record and briefs as to the statute of limitations may be wholly disregarded. As stated by appellants, the real issue is as to whether the strip of land is part of the east half or part of the west half of the said west half of section 24. The court found that the land is wholly within the west half of the west half of the said section, and accordingly ordered judgment for respondents. The evidence supports the finding. The respondents' witness Brasfield, who appears to be a competent surveyor, testified that the land in controversy is a part of the west half of the west half of the section. In determining this he deemed it essential to find the true line as established in the field, running north and south, separating sections 23 and 24. He commenced by getting a copy of the field-notes from the United States land office and finding the southeast corner of section 25 on the meridian line, or what he deemed to be the corner. This corner appears to have been marked by one Ashley, the surveyor who testified for appellants, and was shown to the witness by one McCullough. From this starting-point the witness ran north eighty chains, thence west along the south line of section 24 one mile from the meridian line to what he deemed

to be the southwest corner of section 24. He then ran the line north one mile between sections 23 and 24. The field-notes as to this line are as follows: "From post in mound of earth (corner to section 23, 24, 25, and 26). North between secs. 23 & 24, 19.50, cross a creek; course N. E. 33.50 cross a creek, course N. W. 40.00 set ¼ sec. post and raised a mound of earth; 51.00 cross road to lone tree; 53.50 creek 60 links wide, course N. 'E. 56.00 leave the same. 80.00 set post and raise mound of earth cor. to secs. 13, 14, 23 & 24. Land level; and soil 1st rate. No timber."

The creek referred to in the field-notes is known in the vicinity as "Bird Creek," and is the only creek there. The witness followed the line as indicated by the field-notes, and found the line in courses, distances, and crossing the creek to agree in every respect with the field-notes, except at the point of leaving the creek, instead of being fifty-six chains, it was a distance of fifty-six chains and thirty or forty links, which the witness accounted for by the fact that there had been some erosion of the bank of the creek since the government survey, which made the line leave the creek at a greater distance that fifty-six chains. The witness further testified that he found by this line that section 24 was "just about full, and an equal division, observing the line as I found it by Bird Creek, would give each one their proportion of land. . . . I say the line which I located between Nolan and Hershey is the correct line, because it is an equal division of the land between the natural objects along the line between sections 23 and 24 and between the meridian line or east boundary 24. I don't think there is the slightest question about that on this line." The witness further testified that he identified the creek by the field-notes, and that it would be impossible for a line to be made more than four or five feet from the line described in the field-notes without wholly disregarding the creek as a natural object referred to therein. There is no evidence tending to show that this witness did not correctly locate the line between sections 23 and 24 from the field-notes. Not only this, but the testimony of appellant's surveyor, Ashley, corroborates the testimony of Brasfield. Ashley was first employed by defendants, and made a survey by the field-notes, locating the line practically in the same place as located by Brasfield. He testified as to this first

survey: "As those notes called for a certain stream running up through, along or near the line between 23 and 24, I took that as a basis to make my survey upon, and made the survey from the corner. . . . These were government field-notes that I had there, this arroyo or creek is well defined, it is a pretty good arroyo there. . . . In chaining along it [the arroyo] I found the chains to correspond substantially with the field-notes. . . . There was no other natural object·there upon that section called for by the field-notes, outside of the arroyo. . . . The accuracy of my first survey, as I understand it, depends upon whether this creek you speak of is or is not a monument of the survey; if the creek is a monument of the survey my last survey is incorrect."

After Ashley had made this first survey for defendants, he made another survey. He says that he became suspicious that his first survey was not correct because there was a surplus in section 23 of some two hundred and four feet; that he thought this surplus should be divided between the two sections. Among the reasons for making the second survey the witness states: "Another thing was the palpable injustice of giving one section a surplus and the other such a great deficiency . . . my object was to make the survey conform, if I could, to the west line of the Nolan place [respondents' land]. . . . Two theories were advanced as a reason for re-locating these corners; one was the theory of considering the slough the monument, and the other was to divide the excess between adjoining holders. I don't know what theory Hurst advanced that caused me to change· those stakes. I had lots of theories myself."

It is evident that the surveyor Ashley was not looking for the true government lines, but, as he says, his object was to "pro-rate the surplus." He desired to make the survey conform to a certain line, and he did not desire° section 23 to have too much land. But the rule as to restoring lost corners by putting them at an equal distance between two known corners has no application, if the line can be retraced as it was established in the field. The field-notes should be taken, and from the courses and distances, natural monuments or objects, and bearing trees described therein the surveyor should endeavor to fix the line precisely as it is called for by the field-notes. He should endeavor to retrace the steps of

the man who made the original survey. If by so doing the line can be located, it must be done, and, when so located, it must control. It is not the business of the surveyor to speculate as to whether one government subdivision is short and the other long in acres. He is not authorized to correct what the government has done. The line as surveyed and described in the field-notes is the description by which the government sells its land. If its description makes one section contain three hundred and twenty acres and another nine hundred and sixty acres, the parties must take according to the calls of their patents.

As said in *Kaiser* v. *Dalto*, 140 Cal. 172, "The lines as originally located must govern in such cases. The survey as made in the field, and the lines as actually run on the surface of the earth at the time the block were surveyed, and the plats filed must control. The parties who own the property have a right to rely upon such lines and monuments."

In *Tognazzini* v. *Morganti*, 84 Cal. 160, it is said by this court, speaking through the chief justice: "The rights of the respective parties of course depend upon a correct relocation of the Terrill line. . . . The road it crosses [speaking of the Von Schmidt line] is a road running north and south, while the road called for in Terrill's field-notes, and delineated on his map, runs nearly east and west. . . . We think this call for the course surveyed is much less certain and trustworthy that the calls for the entrance to and exit from the Cañada, the crossing of the road east and west, the entrance to the Cañada Verde, and the distance of the course from the adobe houses—all of which sustain the Minto survey."

It is said in *Harrington* v. *Boehmer*, 134 Cal. 199: "The question in all cases similar to this is, Where were the lines run in the field by the government surveyor? A government township lies just where the government surveyor lines it out on the face of the earth. These lines are to be determined by the monuments in the field."

In view of what has been said the alleged errors as to rulings on the admission or rejection of evidence need not be discussed. They could not have affected the result, and hence are not material.

We advise that the judgment and order be affirmed.

Chipman, C., and Smith, C., concurred.

CXLIV. Cal.—29

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Henshaw, J., McFarland, J., Lorigan, J.

Hearing in Bank denied.