[Civ. No. 8006.   Third Dist.   July 3, 1952.]

ANTONIO PEREIRA DE ESCOBAR et al., Appellants, v. WALTER ISOM et al., Respondents.

Griffin & Cardozo for Appellants.

Whitehurst & Logan for Respondents.

PEEK, J.—Plaintiffs are the owners of the north half of Section 28, Township 6 South, Range 8 East, M.D.B.&M. Defendants are the owners of the south half of the same section. A dispute arose between them concerning the boundary of their respective properties and the ownership of a narrow strip of land along said boundary. The strip in question is approximately 12 feet wide at the westerly end and approximately 16 to 20 feet wide at the easterly end. As a result of the controversy plaintiffs filed a complaint by which they sought to restrain defendants from using the land embraced in said strip. Defendants answered denying the material allegations of the complaint, and by a cross-complaint sought to quiet title to the land included within the strip and to have the boundary line established. The case was twice tried. The first trial was before the late Judge Hjelm, who died while the matter was under submission. The second trial resulted in a judgment for defendants on their cross-complaint. Plaintiffs have now appealed from that judgment, contending (1) that the boundary line as found by the trial court is not supported by the evidence, and (2) that the court in reaching its conclusion followed an inappropriate rule of law. From our examination of the voluminous record and the briefs of the parties it appears that neither contention is well founded.

Apparently because of litigation involving an early Spanish land grant (the Orestimba Rancho) which included part of the easterly portion of Township 6, two government surveys were made, the first by one Terrell in 1859, which covered all of section 28, and the second by one Dyer in 1861. The second survey included only that portion of the township wherein said rancho was situated but did not include any part of said section 28.

The evidence disclosed by the record before us shows that between the two properties there was, and still is, a well defined plow ridge and that until the same was removed in 1935 a fence had always been maintained along the west half mile of the ridge. It was also shown that the fence was in line with other fences in that area. When said fence was removed a post was placed at the midsection end. The parties continued to use the ridge as a roadway for the full

distance between their properties, and in 1941 shared the cost of oiling it. From the date of the issuance of the first patents the record shows continual diverse ownership between the north and south halves of said section. The record also shows, without contradiction, that there is no trace presently visible of any of the monuments placed in said section 28 by Terrell nor can any monument be established as having been placed anywhere in said township prior to the issuance of patents. In fact, as the court observed in its memorandum opinion, there is no visible original government monument, the original location of which is definitely known, within miles of the township to which any "tie" can be made which would be of any assistance in this matter. This fact, the court observed, was not surprising in view of the temporary nature of the original monuments and the long lapse of time before subsequent surveys were made. The record in this regard shows that it was not until 1908, nearly 50 years after the original survey, one Finney set what is referred to as Post 212, which post has been accepted by some as a starting point for recent surveys in this area. However, the evidence shows that said post was set at a point which Finney merely believed to be the location of the original Post 212. There is no evidence indicating that it was at the true location of the original monument nor has it been universally accepted as such. The testimony further discloses that due to the lack of any fixed monuments it is necessary, and all of the surveyors who testified followed the same practice, to attempt to locate the true lines of the property in question by proportioning the distances in a north and south direction between present monuments. But again none of such monuments were shown to be at the points of any of the original government monuments. The evidence only shows that they were placed by surveyors at the points where the particular surveyor personally calculated the original monuments might have been set or in close proximity thereto. Illustrative of the wide discrepancy resulting from such practices is the testimony of plaintiffs' witnesses which shows that at the southeast corner of section 34, the section adjoining said section 28 at the southeasterly corner thereof, there are two monuments, the first set by one Sloan and the second set by one Townsend. Although these monuments are 12 feet apart in one direction and approximately 4 feet apart in another it appears from the record that surveyors have indiscriminately used one or both. Also this point is approximately two and one-

half miles distant from said Post 212. It must be noted further that one of the surveyors, called as plaintiffs' witness, testified that said Post 212 cannot be used to apportion the east-west lines, which are the ones here in issue, but can only be used to apportion the north-south lines, which are not in dispute.

It is the general rule that in situations such as is presented herein recourse must be had first to the monuments placed in the original surveys. Secondly, if such corners cannot be established the field notes should be taken and "from the courses and distances, natural monuments or objects, and bearing trees described therein the surveyor should endeavor to fix the line precisely as it is called for by the field notes. He should endeavor to retrace the steps of the man who made the original survey" (*County of Yolo* v. *Nolan,* 144 Cal. 445, 448 [77 P. 1006]), and if by doing so the line can be located it must be done, and when so located "it must control."

The record in the instant case, however, shows that plaintiffs' witnesses, rather than testifying to attempts to retrace the original surveys (since the monuments were not visible) merely endeavored to prove the location of the starting point of the Terrell survey at the east quarter corner of section 28 by the "proportionate method," that is, by dividing the distance between northerly and southerly points according to their own ideas as to where that corner should be. However, it appears from the testimony of each of the several surveyors who testified as experts that none were in agreement as to any starting point or line which they ran. In light of the total lack of any established boundaries from which to begin, it is readily apparent that any line, the result of such proportionate method, can be no more correct than the point from which the apportionment is made. As Judge Cooley said in *Diehl* v. *Zanger,* 39 Mich. 601: "The question is not how an entirely accurate survey would locate these lots, but how the original stakes located them." Otherwise, as he stated, "the visitation of the surveyor might well be set down as a great public calamity."

Under such circumstances the trial court quite properly predicated its determination upon testimony of witnesses having personal knowledge of the general conditions relative to the use and occupancy of the premises by the parties to this proceeding and by their predecessors in interest. It would seem unnecessary to summarize the testimony of the many witnesses who testified to the long usage of the strip

in question as a plow ridge and the maintenance of fences thereon long prior to the memory of any of the witnesses. Rather than summarize such testimony, which adequately supports the findings of the trial court, we borrow the words used by the trial judge in his memorandum opinion who, in discussing this phase of the case said, "The courtroom was full of whiskers and rheumatism for several days."

The situation thus presented is precisely the same as was presented in the case of *Hannah* v. *Pogue,* 23 Cal.2d 849, 856 [147 P.2d 572]. There it was held that "the court may infer that there was such an agreement ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between the lands of two owners." Such boundaries, the court said, have been recognized for the same reason as is presented here, the uncertainty of the original surveys and the destruction or loss of monuments and other landmarks.

For the foregoing reasons we conclude that the record amply substantiates the findings of the trial court that the plow ridge between the properties was a permanent visible and substantial monument and that the fence which had been erected and used for more than 70 years prior to the commencement of this action had been accepted and agreed upon as the recognized and acquiesced boundary line between the north and south halves of said section.

The judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.

A petition for a rehearing was denied July 24, 1952, and appellants' petition for a hearing by the Supreme Court was denied August 28, 1952.