[Civ. No. 8248.   Fourth Dist., Div. Two.   Apr. 14, 1967.]

REGINALD SAUNDERS et al., Plaintiffs and Respondents,
v. SAM Z. POLICH et al., Defendants and Appellants.

DeBord, Lopez and T. L. DeBord for Defendants and Appellants.

Bob H. Krug for Plaintiff and Respondent Florence Roos.

Reginald Saunders, in pro. per. for Plaintiff and Respondent.

McCABE, P. J.—This action was brought by plaintiffs Reginald and Gladys Saunders and Florence Roos in trespass and to quiet title to a strip of land 331.89 feet in length and varying in width from 20 feet at the west to 14.6 feet at the east. The Saunders own the parcel south of and claim the disputed strip. Florence Roos, a prior owner of the land owned by Saunders, is owner of a purchase money trust deed which by its legal description encumbers the disputed parcel and additional real property. Defendants, brothers Sam and Joe Polich, own the parcel to the north of and claim the disputed strip. Judgment was entered in favor of plaintiffs. Because of failure of proof as to the rental value of the strip, damages were limited to one dollar. After denial of their motion for new trial, defendants appeal.

In violation of rule 13, Rules of Court, appellants fail to comply with the requirements of this rule since their brief fails to include a "summary of the material facts." Respondents are of no aid to the court since they filed no brief. We must glean the facts from the record.

For many years prior to 1950, a parcel of property in Section 4 was owned by one O'Harra. In September 1950, O'Harra deeded the east quarter of the southeast quarter of the northwest quarter of Section 4 to plaintiff Roos without reservation. In August 1952, O'Harra deeded, subject to rights-of-way and easements of record, the northwest quarter of Section 4 excepting the easterly 10 acres of the southeast quarter of the northwest quarter of said section to defendants Polich. The parcels so deeded had contiguous borders. O'Harra had owned both parcels since 1945. At some date prior to 1945, a fence with wooden posts had been constructed across the parcel owned by O'Harra but at the time of the O'Harra purchase only the remnants of some posts without lateral fence material remained.

In 1929 a predecessor-in-interest had granted a right-of-way to a power company. By the legal description in the right-of-way grant, the center line of the right-of-way was to com-

mence at a point "one (1) foot North of the Southwest corner" of the N. ½ of the N.W. ¼ of Section 4, "running thence Easterly parallel to one (1) foot North of the South line of said parcel. . . ." A power line was built across the property. Generally, the location was described in the evidence as being somewhat parallel to the "older fence line."

Later and in approximately 1947, O'Harra built a fence approximately, but not exactly, on the line where the old fence had been. O'Harra had constructed the 1947 fence as a "cross-fence for pasture." At no time did O'Harra believe the new fence constituted a division between the parcels later conveyed to plaintiff Roos or defendants Polich nor did he inform either or any of these parties that it did constitute a boundary line. At or prior to the time of the sale to defendants Polich, O'Harra never went onto the property with the defendants Polich.

However, plaintiff Sam Polich testified that at the time of the purchase of the land from O'Harra he was told by O'Harra that the fence was the boundary line. This testimony was admitted by the court for the sole purpose of possible impeachment of O'Harra's testimony. It must be considered solely within the limited area of admission.

After defendants Polich had purchased the property, they farmed the trapezoidal-shaped parcel now in dispute.

Plaintiff Roos never questioned the location of the fence as being a boundary line until the freeway surveyors "bought part of our property, showed where the lines should be." When this event occurred is uncertain but the freeway survey map which is in evidence has a date in the upper right hand corner, "Approved July 29, 195—." The corner of the map is torn off which eliminates the last digit of the year. There are other dates on this map showing revisions from 1957 to June 1958. It was after these events that plaintiff Roos informed defendants the fence line was on her property.

In 1961 the deed from Roos to Saunders was recorded but the sale had been negotiated in 1960. In 1960 plaintiff Roos, at the insistence of plaintiff Saunders, had a survey made by Mr. Kenyon, a surveyor-engineer. From the Kenyon survey, plaintiff Roos learned the fence line was not the northerly boundary of her property that in fact the deed descriptions and survey placed her northerly property line 20 feet north of the O'Harra fence line on the westerly boundary and 14.6 feet north of the O'Harra fence line on the easterly boundary. This trapezoidal-shaped parcel, 331.89 feet in length, is the subject of the lawsuit.

After the Kenyon survey, plaintiff Roos had a conversation with defendant Sam Polich. There was no agreement, prior to or after the conversation which took place after the freeway survey, that a fence line was the boundary line between the parcels.

At the time of the sale of her property to plaintiff Saunders, neither plaintiff Roos nor Saunders had any agreement or conversation that a, or any, fence line constituted the boundary between the Roos property and the Polich property. Additionally, prior to and after the results of the Kenyon survey became known, plaintiffs had conversations with defendants regarding the removal by the defendants of the fence line and having the fence placed on the true boundary line. Defendants refused to take such action. From the testimony of plaintiff Saunders, unrefuted by any other testimony, it appears that at the time of the purchase and sale plaintiff Roos told plaintiff Saunders the fence line was on her property. Plaintiff Saunders testified, again unrefuted, ". . . the fence was down. The fence was not up. There wasn't one on it when I bought it. . . ." From Saunders' testimony the, ". . . old post holes . . . bent over and . . . in the ground there. . . ."

There is some evidence that aside from the "old fence line" and the O'Harra fence line there was a third fence. Plaintiff Saunders testified: "Q All right now Mr. Saunders, you have testified that there was the remnants, I believe, of an old fence when you purchased the land from the Rooses, is that correct?

"A Yes.

"Q And also that a newer fence was built?

"A Yes.

"Q By whom?

"A By Polich Brothers.

"Q Did you have anything to do with the building of that fence?

"A No."

This testimony may explain the conflict in the evidence that there were remnants of old wooden posts whereas defendant Joe Polich testified a photograph marked defendants' Exhibit 3 showed "some old fence posts here, metal posts . . . ." The identical Exhibit 3 shows some metal posts without fencing material and some metal posts with fencing in slightly different lines. The photograph was taken by defendant Joe Polich within two months of the trial date.

There is no serious question presented in this con-

140

troversy that the plaintiff Saunders, as successor in interest to O'Harra, is the owner of the quarter section thus delineated and described, but rather the unresolved issue pertains to the location of this quarter's boundaries upon the ground. Since this issue was resolved by the trial court by reference to Kenyon's survey, the correctness of that survey is here subject to review.

At trial and on appeal, defendants asserted the survey was not legally sufficient. ■ We may take judicial notice ''that under the laws of the United States and the regulations of the land office no sales of public lands are made until the plat and field notes of the subdivision survey of the township in which they lie have been returned and approved. . . .'' (*Kimball* v. *McKee,* 149 Cal. 435, 439 [86 P. 1089]; *South Shore Land Co.* v. *Petersen,* 226 Cal.App.2d 725, 745 [38 Cal. Rptr. 392].) These records constitute a public record and certified copies of this plat and the field notes of the government surveyor are available in the land office of each state. The purpose for which these notes are preserved is to enable subsequent holders of these lands to accurately relocate section and quarter-section corners when the original marker or monument locating this point has been obliterated or when the corner has otherwise been lost.

Plaintiff Roos herein sought to accurately relocate, by survey, her common boundary with the defendants' property. Even though the early government surveys may at times have been inaccurate, it is incumbent upon the surveyor to relocate the boundaries by reference to the government plat or field notes. (*County of Yolo* v. *Nolan,* 144 Cal. 445, 449 [77 P. 1006]; *Harrington* v. *Boehmer,* 134 Cal. 196, 199 [66 P. 214, 489].) ■ In seeking to locate the previously established government boundary, generally it is the duty of the surveyor to first attempt to establish these lines by reference ''to the monuments placed in the original surveys. Secondly, if such corners cannot be established the [government survey] field notes should be taken and 'from the courses and distances, natural monuments or objects, and bearing trees described therein, the surveyor should endeavor to fix the line precisely as it is called for by the field notes. He should endeavor to retrace the steps of the man who made the original survey' [citation], and if by doing so the line can be located it must be done, and when so located 'it must control.' '' (*de Escobar* v. *Isom,* 112 Cal.App. 2d 172, 175 [245 P.2d 1105]; see also *Porter* v. *Counts,* 6 Cal.App. 550, 554-555 [92 P. 655]; Ogden's California Real Property Law (1956), § 12.3, pp. 428-430.)

From the testimony of plaintiff's surveyor, it appears that he did not commence his survey from any known point established by a prior official government survey, nor did he attempt to do so, but rather "started from more than one point." The "points" relied upon by this surveyor appear to have been a point established by a Department of Highways freeway survey. The location of the remaining starting points utilized by the surveyor was not established by the evidence. However, the surveyor was of the opinion that the freeway point represented a quarter-section corner of the section in which the plaintiff's property was located.

Irrespective of the accuracy and skill with which the surveyor ran the respective courses and distances necessarily involved in the making of the survey of plaintiff's property, he admittedly failed to locate or utilize any markers or monuments established, as section corners or otherwise, by the last official government survey of this region. This witness also admittedly failed to utilize the field notes of the last official survey to re-establish these "lost" or "obliterated" corners, and he did not utilize these official notes to verify the accuracy of the Department of Highways' survey.

As disclosed by the record, the surveyor failed to refer to the official field notes of survey at any time during this survey, nor were these notes in evidence before the trial court. Yet, inconsistently, the decree quieting title to the trapezoidal-shaped parcel in dispute describes plaintiff Saunders' property, including the parcel in dispute, by reference to the official government plat of this parcel as approved by the Surveyor General, after the official survey on May 19, 1857. Since the Kenyon survey was not based upon the official plat of this parcel, or on the official survey field notes, as a matter of simple geometric construction, there is no certainty the two surveys commenced at the same point or that the parcel encompassed within the boundaries ascertained by plaintiffs' survey is congruent with or coextensive to the parcel as described in the official survey.

There was evidence from one Sturnacle that some of the official section corner-markers were still in place, and that a brass-capped government monument on the township line existed in the adjoining section. However, Sturnacle was in no wise qualified as an expert but testified from his memory as to earlier hearsay statements. One defendant testified as to a section corner-marker, but again this was without qualifying the witness or laying a proper foundation for this testimony.

The foregoing evidence discloses the surveyor, despite his professional opinion to the contrary, at best commenced his survey at a point established by the Department of Highways, which point was purportedly the quarter-section corner. But it is the federal government survey which is conclusive (*Verdi Development Co.* v. *Dono-Han Mining Co.*, 141 Cal.App.2d 149, 152-153 [296 P.2d 429]; *Reid* v. *Dunn*, 201 Cal. App.2d 612, 615 [20 Cal.Rptr. 273]) and in the absence of a comparison of the Department of Highways' field notes to those of the official survey, or some other survey actually ''retracing the steps'' of the official survey, we are of the opinion the Kenyon survey was insufficient as a matter of law, and the judgment must, in consequence, be reversed.

We expressed no opinion as to the applicability of the agreed on ''acquiesced in'' boundary doctrine for the evidence and record are not clear as to the exact location of the various fence lines constituting the purported agreed boundary in relation to any properly evidenced starting point. (See *Hannah* v. *Pogue*, 23 Cal.2d 849, 857 [147 P.2d 572]; *de Escobar* v. *Isom, supra,* 112 Cal.App.2d 172, 173.)

The judgment is reversed.

Kerrigan, J., and Tamura, J., concurred.