Filed 2/14/23 Jacobs v. Ramachandran CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES LEO JACOBS et al., <br><br> Plaintiffs, Cross-defendants and Respondents, <br><br> v. <br><br> SATISH RAMACHANDRAN, <br><br> Defendant, Cross-complainant and Appellant. | H048127 <br> (Santa Clara County <br> Super. Ct. No. 17CV312418) |

This appeal involves a residential boundary dispute between appellant Satish Ramachandran and respondents James Leo Jacobs and Pamela Lawrie Jacobs. Following a bifurcated bench trial, the trial court issued judgments in favor of the Jacobses. Ramachandran contends the trial court erred as a matter of law in relying on the Jacobses' survey to establish the location of the disputed boundary.[1] He asserts that the survey did not comply with timing requirements set forth in Business and Professions

---

[1] Ramachandran was represented by counsel in the trial court. Prior to completion of the record on appeal, his appellate counsel filed a motion to be relieved as his counsel, which this court granted on October 6, 2021. Ramachandran represented himself in his appellate briefing but was represented by counsel at oral argument.

Code section 8762,[2] requiring reversal of the trial court's judgments. For the reasons explained further below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Ramachandran and the Jacobses have been neighbors in Los Altos for approximately 30 years. The Jacobses own residential real property located on Santa Rita Avenue in Los Altos, also referred to as Santa Clara County Assessor's Parcel Number ("APN") 167-18-072 (hereafter, Jacobs property). Ramachandran's property is east of the Jacobs property and is also located on Santa Rita Avenue (also referred to as Santa Clara County APN 167-18-060) (hereafter, Ramachandran property).

In 2014, neighbors to the west of the Jacobs property (who are not parties here) informed the Jacobses that a structure on the Jacobs property was encroaching on their land. In response, in November 2014 the Jacobses hired a licensed land surveyor, Bryan Taylor. Taylor performed a survey of the Jacobs property in 2015 and prepared both a boundary and topographic survey and a record of survey.[3]

Taylor's survey showed that the Jacobses' fences did not correspond with their property boundaries. In relevant part, the survey revealed that the Jacobs property extended slightly further east and south than the fencing, and that an accessory structure in the southeast of the Jacobs property (accessory structure) was approximately one foot within the Jacobses' side of their boundary with the Ramachandran property.

Ramachandran did not accept the findings made by Taylor, asserting that a separate survey showed that the Jacobses' accessory structure encroached on his property. The Jacobses and Ramachandran continued to disagree about the location of their common boundary line, and their dispute escalated.

---

[2] Unspecified statutory references are to the Business and Professions Code.

[3] A "record of survey" is "a map, legibly drawn, printed, or reproduced by a process guaranteeing a permanent record in black on tracing cloth, or polyester base film, 18 by 26 inches or 460 by 660 millimeters." (§ 8763.)

2

In 2017, the Jacobses filed a verified complaint to quiet title which asserted equitable claims against Ramachandran. Ramachandran filed a verified cross-complaint that asserted similar equitable claims against the Jacobses and, additionally, a number of tort claims (for nuisance and trespass against the Jacobses and for assault and battery against James Leo Jacobs).

The Jacobses moved for summary judgment and summary adjudication. In response, Ramachandran for the first time commissioned his own survey, which was conducted by Thomas Dougherty in May 2019. Dougherty used an "unmarked iron pipe" as the starting point of his survey. Dougherty agreed with the Taylor survey's conclusion that the Jacobses' accessory structure did not encroach on Ramachandran's property. However, Dougherty's survey found the eastern wall of the accessory structure was less than one foot (0.71 feet) within the Jacobs property (rather than sitting one foot from the property line, as found by Taylor).

The trial court conducted a bench trial in two phases, which occurred over several days in July 2019. Phase 1 of the trial involved the equitable claims and determination of the common property line. The trial court heard testimony from a number of witnesses, including surveyors Dougherty and Taylor. Taylor explained how he had determined the property lines for the Jacobs property, including describing the field notes and maps he used to determine the monuments for his survey. In addition to the record of survey, he prepared a detailed boundary and topographic survey. Taylor disagreed with Dougherty's reliance on the unmarked iron pipe. Dougherty also testified to explain his survey.[4]

The trial court admitted into evidence Taylor's record of survey (hereafter, Taylor survey) and his boundary and topographic survey—all without objection from Ramachandran.

---

[4] We do not further summarize the details of the testimony of the parties and expert witnesses as their testimony is not relevant to the issue before us.

The Taylor survey contains a map of the Jacobs property, and it references the Professional Land Surveyors' Act in a number of places. The surveyor's statement includes the following: "This map correctly represents a survey made by [Taylor] or under [Taylor's] direction in conformance with the requirements of the Professional Land Surveyors' Act at the request of Pamela Jacobs" in February 2015 (some capitalization omitted). The official county surveyor's statement explains that the map was examined pursuant to the Professional Land Surveyors' Act on November 17, 2016. Under the recorder's statement, the official county recorder confirms the survey was "filed" on the following day (November 18, 2016). (Capitalization omitted.) Near the bottom of the survey, there is a heading titled "Reason for Mandatory Filing" and under that heading it states "Professional Land Surveyors['] Act section 8762[, subdivision] (b)(2)[,](4)" (underlining and some capitalization omitted).

Posttrial, and at the trial court's request, Taylor and Dougherty each submitted declarations addressing specific questions posed by the trial court.

The trial court issued a statement of decision relating to phase 1. The trial court found that Taylor's testimony was more credible and persuasive than Dougherty's testimony and that the Taylor survey correctly set forth the property line between the Jacobs property and the Ramachandran property. The trial court explained that it was not persuaded by Dougherty's reliance on an unmarked iron pipe as the premise for his survey. It further noted that Taylor had more extensive experience in surveying single family homes and that he had conducted his survey before any dispute had arisen between the Jacobses and Ramachandran over their common boundary.

The trial court subsequently issued a statement of decision for phase 2 of the trial, addressing Ramachandran's tort claims for nuisance and trespass against the Jacobses and his assault and battery claims against James Leo Jacobs. The court explained that Ramachandran's nuisance claim depended principally upon the asserted encroachment of the Jacobses' accessory structure on Ramachandran's property, and its "adjudication of

4

the boundary dispute in favor of [the Jacobses] forecloses relief." The trial court also ruled against Ramachandran on his trespass, assault, and battery causes to action.

Approximately one month later, the trial court entered judgment in phase 1 of the bifurcated trial in favor of the Jacobses on all of their causes of action (for quiet title, declaratory relief, and permanent injunction) against Ramachandran. The judgment also found in favor of the Jacobses and against Ramachandran on Ramachandran's corresponding equitable claims asserted in his cross-complaint for quiet title, declaratory relief, and injunctive relief. The phase 1 judgment attached the Taylor survey as an exhibit and stated the Taylor survey "sets forth the property line between" the Jacobs property and the Ramachandran property.

That same day, the trial court entered judgment in favor of the Jacobses in phase 2 of the trial on Ramachandran's tort claims (nuisance, trespass, assault, and battery).

Ramachandran timely appealed.

## II. DISCUSSION

On appeal, Ramachandran raises a single claim of error. He challenges the validity of the survey relied upon by the trial court (i.e., the Taylor survey) to decide the disputed boundary. He claims the surveyor did not timely submit the survey to the county under section 8762, which defect renders the "judgment" legally invalid.[5] The Jacobses contend Ramachandran forfeited his claim on appeal, because he never raised the survey issue related to section 8762 in the trial court, did not object to its admission

_____

[5] As noted, the trial court issued two judgments, one in phase 1 of the trial dealing with the parties' equitable claims and one in phase 2 that addressed Ramachandran's tort claims (for nuisance, trespass, assault, and battery). Based on Ramachandran's briefing in this appeal, we understand him to challenge only the phase 1 judgment. However, his civil case information statement attaches both judgments, and Ramachandran's opening brief states that he "appeals the Order of judgment rendered against Appellant and in favor of Respondent for Quiet Title, Declaratory Relief, Permanent Injunction, Nuisance, Trespass, Assault, and Battery." As the judgment in phase 2 included a nuisance claim that the trial court deemed failed based on its resolution of the boundary dispute in phase 1, we consider both judgments in this appeal.

into evidence, and relied on the Taylor survey as part of his own case. The Jacobses also address Ramachandran's claim on the merits and assert he has failed to demonstrate any prejudicial error.

Ramachandran challenges the Jacobses' contention of forfeiture, asserting there are no disputed facts at issue in his claim on appeal. Ramachandran contends he is not raising any evidentiary issue but rather a "pure question of law"—namely, whether a trial court may rely on a survey that violates a timing requirement set forth in section 8762 to resolve a boundary dispute. He further asserts this is a question of statutory construction or application of the terms of the statute to undisputed facts.

A. *Forfeiture*

We first address forfeiture. "In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court. [Citation.] 'The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party, and on the practical need for an orderly and efficient administration of the law.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 406 (*S.C.*).) One rationale for the forfeiture rule is that "it is inappropriate to allow any party to 'trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable.' " (*Ibid.*) However, "a party may change the legal theory he relied upon at trial, so long as the new theory presents a question of law to be applied to undisputed facts in the record." (*Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15; *Ryan v. Real Estate of the Pacific, Inc.* (2019) 32 Cal.App.5th 637, 643–644.)

As Ramachandran's argument on appeal does not rest on any disputed facts, we will consider the merits of his claims.

B. *Merits*

Ramachandran contends the trial court's reliance on the Taylor survey was "legally problematic" because Taylor did not timely submit the survey to the county

6

recorder's office, as required by section 8762. He contends Taylor should have submitted the survey on or by May 18, 2015, but instead Taylor "physically transported the survey" to the county recorder's office in October 2016.[6] Ramachandran contends that the survey "cannot serve as the foundation for the concomitant judgment" as a matter of law and we must reverse the judgment.

    1. Legal Principles

Well-established principles of appellate review guide our analysis. We presume the trial court's order was correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) As the appellant, Ramachandran bears the burden of showing that the trial court committed an error that justifies reversal of the judgment. (*Id.* at p. 609.) "[C]onclusory claims of error will fail." (*S.C.*, *supra*, 138 Cal.App.4th at p. 408.) Additionally, an appellant must establish prejudice. (*Id.* at p. 407.) A self-represented litigant must also comply with the fundamental principles of appellate review. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

We review a trial court's interpretation and application of statutes de novo. (*Carmel Development Company, Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 503.)

Provisions of the Code of Civil Procedure authorize a trial court to adjudicate a boundary dispute. (See Code Civ. Proc., §§ 760.020, 760.030.) The trial court may rely on expert and nonexpert evidence to determine " 'the actual location of the monuments, corners or lines as actually laid out on the ground by the official surveyor.' " (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 737.)

Section 8762 is part of the Professional Land Surveyors' Act. Section 8762, subdivision (b), states that a record of survey "shall" be filed if any of five specified

---

[6] Ramachandran provides no citation to any document in the record that contains a date of October 2016 related to the survey. The record reflects that Taylor made the survey in February 2015 and the county recorder's office "filed" the survey in November 2016. (Capitalization omitted.)

circumstances apply. It states that "[n]otwithstanding subdivision (a), after making a field survey in conformity with the practice of land surveying, the licensed land surveyor or licensed civil engineer *shall file* with the county surveyor in the county in which the field survey was made a record of the survey relating to land boundaries or property lines, if the field survey discloses" any of the listed circumstances.[7]  (§ 8762, subd. (b), italics added.)

Subdivision (c) of section 8762 states that "the record of survey required to be filed pursuant to this section *shall be filed within 90 days* after the setting of boundary monuments during the performance of a field survey or within 90 days after completion of a field survey, whichever occurs first." (Italics added.)

2. Analysis

Ramachandran principally argues that because section 8762, subdivision (c), uses the word "shall," he has shown error.

We disagree. While Ramachandran quotes from provisions of section 8762 and cites to case law construing the word "shall" in various contexts, he provides little if any legal argument beyond these general principles. The case law he points us to primarily consists of decisions from the United States Supreme Court that do not advance his argument as they involve interpretations of federal law that have no application here.

The California Supreme Court's decision in *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538 (*Tarrant*) also does not assist Ramachandran. He cites to *Tarrant* for the proposition that "[s]ettled principles of statutory construction direct that the word 'shall' be construed as mandatory." However, *Tarrant* involved a different statute and context relating to Code of Civil Procedure section 638 (*id.* at

_____

[7] The parties appear to agree that subdivision (b) of section 8762 applies to the Taylor survey. Indeed, as noted, the Taylor survey stated it was a "mandatory" (capitalization omitted) filing under subdivision (b)(2) and (b)(4) of section 8762. We need not decide which of the circumstances are at issue in this case to resolve the issue before us in this appeal.

8

p. 542), and it does not discuss, let alone mention, section 8762. It therefore does not support Ramachandran's argument. " 'Cases are not authority for propositions not considered therein." (*Harris v. University Village Thousand Oaks, CCRC, LLC* (2020) 49 Cal.App.5th 847, 855.)

In any event, our high court in *Tarrant* did not purport to hold that all uses of the word "shall" in a statute make the directive mandatory. To the contrary, our high court confirmed the principle that the statutory language is the "starting point" for determining an issue of statutory interpretation and that in "determining whether the Legislature intended a statute to be mandatory or permissive, use in the statute of 'may' or 'shall' is merely indicative, not dispositive or conclusive." (*Tarrant, supra*, 51 Cal.4th at p. 542.) As Ramachandran does not provide any relevant authority that supports his claim of trial court error, we reject his claim. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

Moreover, even assuming for purposes of argument that there was a failure to comply with the 90-day timing requirement of section 8762, subdivision (c), Ramachandran does not provide any authority for his contention that the trial court was therefore prohibited from relying on that record of survey to resolve the boundary dispute under such circumstances. He does not explain how this timing error has any relevance to the disputed issue before the trial court. He does not contend the survey was inaccurate or that Taylor's methods or measurements were otherwise legally insufficient as a matter of law. (Cf. *Saunders v. Polich* (1967) 250 Cal.App.2d 136, 142). Rather, he simply concludes that the "violation" of the timing requirement under section 8762 "invalidates the survey" and the trial court's "rulings are, similarly, legally void." Such a bare and undeveloped assertion of error provides no basis to reverse the judgment. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 565.)

Assuming for purposes of argument that Ramachandran has demonstrated error, he must also show prejudice. (See Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.*

9

(2004) 33 Cal.4th 780, 801.) "Unless the error is reversible per se, we apply the prejudicial error rule even if the trial court failed to follow a statutory mandate." (*Guardianship of C.E.* (2019) 31 Cal.App.5th 1038, 1054.) " 'To establish prejudice, a party must show "a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached." ' " (*Ibid.*) Additionally, "[b]ecause of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Ramachandran does not address prejudice in his briefing. His failure to address prejudice is also fatal to his claim. Based on our own examination of the record, we have not identified any prejudice flowing from any purported error by the trial court related to the timing of the filing of the survey. The trial court heard Taylor's testimony, considered the basis for his survey, and explicitly found him credible and expert in the survey of parcels such as those involved in this case.

We decide Ramachandran has failed to demonstrate any error resulting in a miscarriage of justice that warrants reversal of either of the judgments against him.

### III. DISPOSITION

The judgments are affirmed. Respondents are entitled to recover their reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

10

_____
                   Danner, J.

WE CONCUR:


_____
Bamattre-Manoukian,  Acting P.J.




_____
Wilson,  J.




**H048127**
*Jacobs et al. v. Ramachandran*